## V. A. UPCHURCH v. THE STATE.

### *No. 1494. Decided December 22nd, 1896.*

1. **Discharge of Jury on Account of Sickness—Practice.**

Where the court is called upon to exercise its authority under Art. 737, Code Crim. Proc., to discharge a jury on account of sickness of one of the jurors, or other circumstance occurring to prevent their being kept together, it is absolutely necessary to judicially ascertain the fact of sickness, etc., before the jury could be legally discharged. There must be a judicial finding upon an investigation of the facts in open court, and in the presence of the accused.

2. **Same—Discharge of Juror for Sickness—Defendant Must be Present.**

If any fact is to be established requiring or necessitating the discharge of the jury before the verdict, as the sickness of one of the panel, the defendant must be present. It is beyond the legal authority of the trial court to determine the sickness of a juror, as a cause for the discharge of the jury, in the absence of the accused.

3. **Former Jeopardy—Discharge of Jury.**

After all the evidence in the case had been submitted to the jury, about 12 o'clock at night the sheriff reported to the judge, at his private apartments, that the wife of one of the jurors was taken suddenly sick and not expected to live; whereupon, the judge instructed the sheriff to discharge the juror, which was done, and he went home; all of which was without the knowledge or consent of defendant or his counsel. The next morning, when apprised of the action of the court, they refused to proceed in the trial with eleven jurors; whereupon the court, over the protest of defendant, discharged the jury and continued the case to the next term, defendant properly excepting to this action at that time. At the next term, defendant pleaded these facts as former jeopardy, and the plea was overruled. Held: Error, and that the defendant had been placed in former jeopardy, and was entitled to his discharge.

APPEAL from the District Court of McLennan. Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for murder in the second degree; penalty, ten years' imprisonment in the penitentiary.

On the 19th day of November, 1894, an indictment was filed in the District Court of McLennan County, Texas, against appellant, charging him with the murder of one Milton Hale. On the 2nd day of May, 1895, the case was called for trial, a jury was duly selected, empaneled and sworn to try the cause, and appellant entered his plea of "not guilty." The State introduced its evidence and rested; after which, it being adjourning hour, the court put the jury in charge of an officer for the night, and took recess until next morning. During the night, and before the morning of the 3rd of May, Jesse Abbott, one of the jurors selected to try the case, sent word to the court by the sheriff in charge of said jury, that his (Abbott's) wife was sick and had sent for him, and he (Abbott) asked to be excused from further service on the jury. The court, acting on this message, without the consent of either the defendant or his counsel, or even their knowledge, and in their absence out of court, and in the absence of the jury, directed the sheriff to discharge said juror, Abbott, which was done.

When court convened the next morning, the defendant was told for the first time of the action of the court in the discharge of the juror, and when the defendant insisted upon his right to be tried by a full

jury, the court discharged the rest of the jury over the protest of the defendant, and without his consent, and continued the cause, to which defendant excepted.

On October 12th, 1896, this cause was again called for trial. Defendant filed and presented his plea of former jeopardy. The State filed a motion to strike out said plea, which the court overruled. The court, however, refused to sustain said plea of former jeopardy, but stated that he would submit same to the jury, to which defendant excepted.

At the second trial, with regard to defendant's plea of former jeopardy, the evidence introduced, was substantially as follows: Mr. Garrett, the messenger who came for juror, Abbott, stated that. Abbott's little girl came over to where he was in his cotton patch, and asked him to go for Abbott and bring him home. He took his wife over to Abbott's house; did not go in himself, but came directly to Waco and went to the courthouse, where he met the sheriff, and told him, the sheriff, to tell Abbott his wife had sent for him to come home at once, as "she was down." On cross-examination, he stated that Abbott's little girl asked him to bring his wife to their house and go for Mr. Abbott.

Dr. Harn, a physician who waited on Abbott's wife, stated that Mrs. Abbott had been confined on the 21st of April, 1895, and was doing well; that he was called in on the morning of May 3rd, 1895, and found her suffering with puerperal malaria fever, but was not dangerously ill. He went to see her, at that time, twice only. The disease with which she was suffering, he said, is considered dangerous, yet Mrs. Abbott's attack was not serious when he arrived; there were no neighbors present while he was there. The court asked Dr. Harn, was it, in his opinion, necessary that her husband be present, to which he replied, yes; and on cross-examination on this point, in reply to a question by defendant, whether it, in his opinion, was necessary for the welfare of the patient that her husband be present, provided she had with her some good female nurse, the doctor stated the following: "It would have been a benefit mentally to her; I mean it would have been a relief to the patient. There was nothing dangerous about the attack."

Judge S. R. Scott, who tried the case, asked to be sworn, and stated in substance, that he was aroused by Deputy Sheriff Reed about 12 or 1 o'clock on the night of May 2nd, who told him that Mr. Abbott, one of the jurors in this case, had a message that his wife was about to die, and was not expected to live until morning. He stated that he inquired of the deputy if he knew that the man who brought the message was reliable, to which the deputy replied, that he did. • "I then," stated the court, "told him to go back and release the juror. I was satisfied the woman was sick." On cross-examination, the court stated "that he was boarding about nine blocks from the court house. He did not see the messenger, jury, defendant or counsel; that this was the same defendant and same case then on trial, under the same indictment, which is a valid one; the defendant was not present when he told the sheriff to discharge the juror."

36th Tex. Crim. Rep. –40.

It was admitted by the court and County Attorney, that the defendant, Upchurch, is the same man who was placed on trial in this cause on May 2nd, 1895; that he is now put on trial under the same indictment as he was then put on trial. That on May 2nd, a jury of twelve were legally selected, empaneled and sworn to try the defendant, viz: Jesse Abbott and eleven others; that the indictment was read and the defendant entered his plea of "not guilty."

Defendant requested the following instructions, which were refused by the court: (1) "The jury are instructed in this case, that the defendant, under the facts of his plea of former jeopardy, is entitled to his discharge, and you will, therefore, find him not guilty." (2) "The jury are instructed that in contemplation of law, this defendant has once before been arraigned on this same indictment, in this court, in such manner as to put him in jeopardy, as the law defines that term, and you are instructed that in this proceeding he cannot be found guilty as charged; you are therefore instructed to return a verdict of not guilty." (3) "The jury is charged that it is admitted in this case that the defendant, Upchurch, now on trial before you, is the same man who was heretofore, on the 2nd day of May, 1895, arraigned in this court on the same indictment which has been read to you in this case. You are also instructed that there is no dispute on that proposition, asserted in this trial by the defendant—that is, that one of the jurors empaneled and sworn on the 2nd of May, 1895, was excused by the court, and dismissed from said jury, after indictment had been read and the State had introduced all of its evidence."

"You are further instructed that the law of the State of Texas requires that the defendant should be present in court, whenever the jury, which has been empaneled to try him, shall be dismissed.

"You are further charged, if you believe from the evidence that the jury empaneled to try this defendant in May, 1895, or any member of that jury, was discharged by any person, without the presence and consent of the defendant, Upchurch, then the defendant cannot be found guilty in this case, whatever might be your opinion from the evidence adduced as to his motives or actions at the time Hale is alleged to have been killed.

"You are instructed that the law requires, whenever a jury may desire to communicate with the judge presiding over the court in which such jury is empaneled, the jury shall make their wish known to the sheriff, and the sheriff shall inform the court, and the jury shall be brought before the court, and through their foreman shall state what they desire to communicate.

"You are further charged that, if you believe from the evidence that any member of the jury, which was empaneled to try Upchurch in May, 1895, was (after Upchurch had pleaded not guilty, and after the State had rested its case) discharged from the jury, without the consent of Upchurch and in his absence, then you should return a verdict, 'We, the jury, find for the defendant upon his plea of former jeopardy.' And

in the event you find that the defendant has been once in jeopardy, on this indictment, you are instructed that you need not further consider this case."

Sam B. Thomas, F. H. Robertson and John W. Davis, for appellant.—The court erred in not discharging the defendant on his plea of former jeopardy, because the same was admitted by the court to be sufficient in law, by his overruling the exceptions of the State to said plea; and because the trial court and counsel for the State admitted all the allegations in said plea to be true, and because the facts in the case show that all the allegations in said plea were true, about which there was no dispute.

No person, for the same offense, shall be twice put in jeopardy of life or liberty.

A person is in legal jeopardy when he is put upon trial before a court of competent jurisdiction, upon an indictment which is sufficient in form and substance to sustain a conviction, and when a jury is charged with his deliverance. A jury is so charged when they have been empaneled and sworn, and defendant has entered his plea of "not guilty." The defendant then becomes entitled to a verdict which shall constitute a bar to further prosecution for the same offense.

All issues about which there is no dispute, but which are admitted to be true by court and counsel, should be passed on by the court. Powell v. State, 17 Tex. Crim. App., 345; Pizano v. State, 20 Tex. Crim. App., 139; Noland v. State (Ga.), 1 Amer. Crim. Rep., 339.

The court erred in refusing to give defendant's special requested instructions. Code Crim. Proc., Arts. 695 to 698.

The court erred in not sustaining defendant's plea of former jeopardy, and not discharging defendant on same under the allegations of said plea, which were not disputed, but admitted to be true, and under the evidence in this cause, because if the illness of the wife of the juror would be sufficient legal excuse to discharge a jury, it was not proper for the court, on a message received from the sheriff at his (the court's) house to direct said sheriff, when the court was not in session, and the jury was not before him, and in the absence of the defendant, to discharge said juror; but it was the duty of the court to call said jury together, open court and have the prisoner brought into court, and the prisoner's counsel, and to inquire more carefully into the reasons for the discharge of said juror than was done by the court; said juror was discharged simply on a message, with no further investigation by the court; there was no affidavit presented to the court, as to the sickness of the juror's wife, and in accordance with the evidence of the messenger who came for said juror, Abbott, from his home; there was no statement that she was ill, but simply that she was sick and had sent him to bring said Abbott home; and if the court had made diligent inquiry, as it should have done, before the discharge of said juror, upon the examination of said messenger under oath, the court would have found that it

was not necessary to discharge the said juror at that time, and it could have ascertained the condition of said juror's wife, and upon such investigation would have found that there was no legal excuse or necessity as shown by evidence, for such discharge.

*Mann Trice*, Assistant Attorney-General, for the State.—1. The action of the trial court in discharging juror, Jesse Abbott, upon receipt of information that his wife was sick and would probably die before morning, and subsequently discharging the entire panel, thereby making mistrial of the cause, is amply supported by Art. 737, Code Crim. Proc., which provides, "If after the retirement of the jury in a felony case, any one of them becomes so sick as to prevent the continuance of his duty, or any accident or circumstance occur to prevent their being kept together, the jury may be discharged." See, Ellison v. State, 12 Tex. Crim. App., 580; Sterling v. State, 15 Tex. Crim. App., 249; 1 Thompson on Trials, Sec. 90.

2. Appellant objects because he was not present and did not consent to the discharge of said juror. The rule that he must be present and consent to the discharge is not arbitrarily applied to all times and conditions, as it only applies to express waiver by defendant. Contingencies may arise in which the law enters the waiver for him, that is, so far as he might object to again being placed upon trial, for instance, the sickness or death of the judge or a juror pending trial. The necessities of such case forces a mistrial by operation of law. 1 Bishop's Crim. Law, Sec. 1032; 1 Bishop's Crim. Proc., § 272; 44 Kan., 75.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and given ten years in the penitentiary; hence this appeal. On the trial of the case, appellant interposed a plea of former jeopardy. The plea set out that the case against this defendant had been tried at a former term of the court; that pending the trial, and after all the evidence for the State had been introduced, and the court had adjourned over night, the wife of one of the jurors was reported to be very ill, the report being made to the sheriff. At about 12 o'clock of that night, the sheriff reported the fact, as communicated to him by a neighbor of the juror, Jesse Abbott, that the wife of said Abbott was taken suddenly sick, and not expected to live, said report being made to the judge at his room, some distance from the court house; whereupon the court directed the sheriff to discharge said juror, Jesse Abbott, and permit him to go home to his wife, which was accordingly done. In the morning, when court was opened, but eleven of the jurors appeared, defendant and his counsel being present, and ready to proceed with the trial. The defendant and his counsel for the first time were then apprised of the action of the judge in discharging said juror. They stated that they were unwilling to proceed without a full jury, and the court then proceeded to, and did, discharge the rest of the jury, on its own motion, over the protest of the defendant, and continued said

case until the next regular term of the court. This action of the court was properly excepted to at the time. This plea was in propria forma. On the trial of the case, the judgment discharging the jury at the former trial, and reciting the facts, was presented to the court, and the action of the court invoked on said plea, which was overruled, and the plea permitted to go to the jury, and the defendant excepted. The matters contained in the plea on the trial of the case were presented to the jury, and proof made, said proof being in substantial accord with the statement heretofore made, the main points of which were not controverted, but conceded to be true. When the jury were charged, appellant asked a charge in substance, directing the jury to find that said plea of former jeopardy was true, and to acquit the defendant thereon. This was refused by the court, and an exception reserved. The court's charge on this point was as follows: "If you find from the evidence in this case bearing upon the issue of former jeopardy that the wife of the juror, Abbott, was sick, and that her condition upon the night in question was such that it was necessary that Mr. Abbott be with her immediately, then, if you so find, you will find said'plea to be untrue; but if you find that said Abbott's wife was not sick, or that if she was sick, that her condition was not such that created a necessity that said Abbott should go to the bedside of his wife, then, if you so find, then you will find said special plea true, or, if you have a reasonable doubt thereon, then you will find said special plea to be true. But, in determining this issue, you must consider all of the facts and circumstances as they appeared upon the night in question, to-wit: May 2nd, 1895, and not as they appear at this day." So the question as to former jeopardy, which involved the action of the court in discharing the jury, is fairly and properly presented to this court for determination. It is not necessary in this case to discuss the question as to whether it is competent for the court, under our Constitution and laws, to discharge a juror on account of the sickness of some member of the juror's family, pending the trial of a person charged with felony. The question we will consider is whether or not the court is authorized to take such action as was taken here, in the absence of the prisoner, and not in open court. Our statute provides (Art. 737, Code Crim. Proc., 1895), as follows: "If, after the retirement of the jury in a felony case, any one of them become so sick as to prevent a continuance of his duty, or any accident or circumstance occur to prevent their being kept together, the jury may be discharged." Conceding that the legislature had the power to enact this article, and conceding that the severe illness of the wife of a juror is such a circumstance as would authorize the discharge of the jury—propositions about which we express no opinion, because unnecessary—still, it was absolutely necessary to judicially ascertain the fact of sickness before the jury could be legally discharged. This apprehends a judicial finding. It is a step in the progress of his trial, and an important one, so far as defendant's rights are concerned. Mr. Bishop says: "That in all trials for felony, at every material stage

in the trial, it is absolutely necessary that the accused be present, else there can be no valid judgment against him." ·1 Bishop's Crim. Proc., § 273.   And he also lays down the following: "If any fact is to be established requiring or necessitating the discharge of the jury before the verdict, as the sickness of one of the panel, plainly the prisoner must be present."   Sec. 272, Subdiv. 2.   We also quote from the well-considered case of State v. Smith, 44 Kan., 75; 24 Pac., 84. This was a case that came up much in the same way as the case before us, and under a statute somewhat similar to ours, with reference to the discharge of a juror on account of sickness.   In that case one of the jurors was taken sick, and it was reported to the court, in the absence of the prisoner, that he was unable to be present in court during the trial, on account of his sickness.   The judge thereupon, in open court, and when defendant's counsel were present (but the prisoner was absent in jail), discharged the panel, and the question of jeopardy was presented.   Among other things, the learned judge, in deciding said case, uses this language:   "When an order is made by a trial court discharging a jury, without verdict, to which has been committed the question of the guilt or innocence of the person charged with the crime, the record ought to show affirmatively the existence of the fact which induced such order, and justified the exercise of such extraordinary power. *  *.  *  Now, the court in this case shows that one of the causes for which the trial court is authorized to discharge a jury in a criminal case by the statute of this State happened on this trial, to-wit: the sickness of a juror.   The sickness did not happen in the immediate presence of the court.   The juror took sick .at home, during a recess of the court, and the fact of sickness had to be established in accordance with the rules that govern in all cases when the fact is to be judicially established, and made a finding upon which to base a legal conclusion or judicial action."   And, in conclusion upon this point, the court say: "We think that error was committed in determining the sickness 'of a juror as a cause for the discharge of the jury, in the absence of the appellant."   Now, in the case at bar the action of the judge was not in open court at all.   It was at night, some distance away from the court room, in the absence not only of the jury, but of the prisoner and his counsel.   Not only so, but this action was taken on the ex parte statement of an officer of the court that some one had informed him that the wife of the juror, Abbott, was very sick.   Could the court, under such circumstances, make a judicial finding of· so important a fact in the progress of this trial—one which involved the discharge of the jury? If so, the discharge of a juror in any case would appear to be a matter entirely within the arbitrary discretion of the judge—a power which he could exercise in the absence of the prisoner, and without any judicial procedure to ascertain the fact which would authorize his action.   Such arbitrary power would place it entirely within the province of .a judge to discharge· ·a jury of his own motion, and without investigation.   If, in any given case, he should desire

the conviction of a defendant, and it should appear that the jury was not likely to convict, that the State had not entirely made out its case, by his arbitrary discretion he could discharge the jury, and upon a subsequent trial, the State being better prepared, secure a conviction. This was the practice of courts in the days of the Stuarts, but happily not so now. It is well settled that the court's discretion is a judicial discretion, and not an arbitrary discretion. Take this case as it appears to us from the subsequent trial, in which the facts were presented; if this investigation had been had when the defendant was arraigned on his first trial, if he had been present, and had objected to the discharge of the jury, and insisted, as he had a right to do, upon an examination as to the necessity for such discharge, the record, as it now presents itself to us, we think, would have shown that there was no such existing necessity for the discharge of the juror. At a subsequent term of the court, not at the time the jury was discharged, evidence was received bearing upon the fact as to whether the juror's wife was sick or not. The testimony received relating to that fact, as we have said above, shows that the jury ought not to have been discharged, but the investigation into the facts should have been made before the jury was discharged, and not at the time the plea was interposed. The defendant had a right to be heard then, and not forced to wait until a subsequent term to ascertain whether the court had acted correctly or not. In Wright v. State, 35 Tex. Crim Rep., 158, in a case involving the question of jeopardy, this court used the following language: "Again, the record informs us simply that the court discharged the jury. We are left to inferences as to the reasons prompting him to this action. There should have been a judgment of the court finding and declaring that the jury had been kept together such a length of time as to render it altogether improbable that they could agree"—citing Adams v. State (Fla.) 15 South., 905. If the court is to find and ascertain the fact which authorizes him to act in discharging a jury, this apprehends a trial—a trial in open court, in the presence of the accused, and not an ex parte proceeding, at which he is neither present nor consenting. Because, in our opinion, the action of the court in discharging the jury was without authority of law, the defendant having once been placed in jeopardy, the judgment of the court below is reversed, and defendant ordered to be discharged.

*Reversed and Defendant Ordered Discharged.*