## FRANK CHAPMAN V. THE STATE.

### No. 1884. Decided June 13, 1900.

**1. Judge—Address to Jury on Impanelment as to Their Duties.**

Previous to appellant's trial for murder the judge on each Monday for three weeks read to the petit jury impaneled for the week, from which the special venire in this case was drawn, an address or lecture as to their duties as jurors, in which he ridiculed and held up ,for contempt both the law of self-defense based upon appearances of danger and the doctrine of reasonable doubt as applied in murder cases, and in effect denouncing these defenses under the present state of the law as being subterfuges which were subversive of justice and right. The defendant in person was not present on these occasions, but his attorneys, who were present, duly reserved a bill of exceptions in which they incorporated said lecture. Held, the said lecture or charge was in principle violative of the provision of articles 715

and 716, Code of Criminal Procedure, and being moreover in direct conflict with the charge as given on the trial of this case, constituted reversible error. Henderson, Judge, dissenting.

**2. Murder—Threats—Charge.**

On a trial for murder, where threats with accompanying acts manifesting an ·intention to execute them by deceased was in evidence, it was error for the court to fail and omit to charge the jury as to such threats viewed in the light of the demonstrations made by deceased manifesting his intention.

APPEAL from the District Court of Brazoria. Tried below before Hon. WELLS THOMPSON.

Appeal from a conviction of manslaughter; penalty three years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Abe Harshaw on May 25, 1899, by shooting him with a gun.

The record is very voluminous, but in Judge HENDERSON's dissenting opinion will be found stated very succinctly the cause of the killing (insulting conduct towards defendant's wife) and the facts immediately attendant upon the killing.

The substance of the address of the court to the petit juries when they were impaneled for each week of the term of the court is given in the opinion of Presiding Judge DAVIDSON. Such of these petit jurors who had heard this address and were summoned upon special venire in this case were challenged for cause because of said address, and the challenge for cause having been overruled defendant used his peremptory challenges upon them and after exhausting his peremptory challenges some of these petit jurors were sworn as jurors and sat in the trial in this case.

*F. J. & R. C. Duff, Wm. Sorley,* and *Brockman & Kahn,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for manslaughter, the punishment being assessed at three years confinement in the penitentiary.

The trial judge, on Monday of each week, for three successive weeks prior to appellant's trial, read the petit jury a document which may be termed, for want of a more appropriate name, a general lecture as to their duties as jurors. A short excerpt will be sufficient to indicate the nature of the document, to wit: "There is a defense for murder that is put in evidence in almost every case that is now tried, until the law-abiding citizen has become alarmed. It is the hip-pocket defense, by which the murderer seeks to justify under the law of self-defense. It has received its sanction in those cases which lay down the rule that the jury must judge the defendant's case from his own standpoint; that they must put themselves in his shoes, and look at his adversary just as he appeared to the defendant himself at the time he fired the fatal shot,

and if the deceased made any demonstration, such as throwing his hands behind him, which reasonably appeared to defendant that his life was in danger, or that he was in danger of serious bodily injury, and defendant then killed deceased, that he would be justified under the law of self-defense. There may be something in the abstract theory thus laid down, and there might possibly arise such a case wherein a party might be justified, although deceased was unarmed. But a person ought not to make any mistake or error in regard to the meaning of such demonstrations or movements of his adversary. In nearly every case the defendant or his friends testify that the deceased threw his hands behind him, and this bare fact seems to be enough to cause juries to rush with jubilant feet to the rescue of the murderer. * * * Now, as you jurors are the exclusive judges of the credibility of witnesses, it is for you to say that when a defendant has murdered a helpless, unarmed man, and he offers proof, by himself or his friends, that although the deceased had no weapons himself, and although he knew that the defendant was himself armed, yet he (deceased) actually threw his hands behind him as if to draw a pistol, which he did not have and never had, and advanced on the armed defendant to certain death,—it is for you to say whether or not such testimony is true or false. If I was a juror, I should, without hesitation, say that such testimony was manufactured, and I should promptly disregard it. I wish to call your attention particularly to the doctrine of reasonable doubt, which is also so often used with such powerful effect in all criminal trials. Our courts have said that reasonable doubt is that state of a case which, after a full consideration of all the evidence, leaves the jury without an abiding conviction, to a moral certainty, of the truth of the accusation against the defendant. It must not be merely speculative, imaginary, possible, or conjectural, but it must be a real doubt, arising out of the whole case. In presenting the theory of a reasonable doubt to the jury, attorneys nearly always conclude their argument with the old maxim that it is better that ninety and nine guilty men should be acquitted than that one innocent man should be convicted. Now, that may be an ancient maxim of the law books, assuming an ethical preference for turning loose many criminals rather than injuring one innocent suspect; but the larger truth, however, is that society and civilization are built upon the sacrificial bones of harmless individuals necessarily offered up for the good of the many." Defendant was not present when this lecture was read to the jury. His counsel were, however, and at each reading excepted. This charge was severely condemned in Jones v. State (Texas Criminal Appeals), 51 Southwestern Reporter, 949, and Attaway v. State, 41 Texas Criminal Reports, 395, was reversed because of its being read to the jurors in advance of their selection to try that case. It is not readily perceived why a trial court will insist on ingrafting novel errors upon charges, injurious in their nature, and violative of our criminal jurisprudence. Under our procedure, a defendant has the right to be present when the jury is charged, when the witnesses are

examined, when the jury is discharged, and when many other steps are taken during his trial. Bell v. State, 32 Texas Crim. Rep., 436; Cline v. State, 36 Texas Crim. Rep., 320; Rudder v. State, 29 Texas Crim. App., 262; Upchurch v. State, 36 Texas Crim. Rep., 624; Hill v. Same, 41 Texas, 255; Mapes v. State, 13 Texas Crim. App., 85; Benavides v. State, 31 Texas Crim. Rep., 173; Shipp v. State, 11 Texas Crim. App., 46; Granger v. State, Id., 454. Article 715, Code of Criminal Procedure, provides: "After the argument in a criminal case has been concluded, the judge shall deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case; but he shall not express any opinion as to the weight of evidence, nor shall he sum up the testimony. This charge shall be given in all cases of felony, whether asked or not." Article 716 provides: "It is beyond the province of a judge sitting in criminal cases to discuss the facts, or use any argument in his charge calculated to rouse the sympathy or excite the passions of a jury. It is his duty to state plainly the law of the case." These articles were enacted for the government of trial courts. They were intended to be strictly observed, and not covertly violated. A casual inspection of the excerpt quoted shows a palpable violation of almost every provision of said articles. If this charge had been given the jury as the law of the case, the conviction, of course, could not stand. It is a severe criticism, animadversion, and denunciation of the law of self-defense and reasonable doubt. These wise provisions of the law and of our criminal jurisprudence are severely arraigned as being subversive of justice and right. Whether or not the trial court believed in the wisdom of these safeguards of human life and liberty, it was incumbent on him, as it was his duty, to observe them. These principles of our law are binding upon trial courts; must be respected, adhered to, and enforced. In the charge given the jury after the conclusion of the argument, the court correctly stated the law of reasonable doubt, but that given before the trial is plainly violative of all law. The charges are directly antagonistic, and can not both be correct. The law of apparent danger, as far as given by the court, was fairly presented, whereas, in the charge given the jury in advance, it was criticised, and held up to ridicule and contempt, as affording a subterfuge and an excuse for acquitting guilty parties. The law of apparent danger (a very necessary part of the charge, under the evidence) was sharply criticised in advance by this address to the petit jurors, and in part omitted from the charge given after the argument. Illustrative of this, evidence of threats, and accompanying acts of deceased, manifesting an intention to execute such threats, was in testimony, and yet the court failed to instruct on the law applicable to this phase of the evidence. It was clearly the duty of the court to have given the jury an instruction with reference to such threats, viewed in the light of the demonstration testified to have been made by deceased at the time of the difficulty, as if to draw a pistol. An exception was reserved to this omission. This was not only error, but an error sharply intensified

when viewed in the light of the lecture given the jury, urging them to disregard this character of defense. It is to be deplored that this court should be called upon again to reverse a judgment under such state of case. There is no warrant of law for such practice. Besides, the charge is clearly wrong.

Exceptions were reserved to the court's action while impaneling the jury in regard to this same matter. Several jurors who were summoned upon the special venire for the trial of appellant heard this charge, and testified to its injurious effect upon their minds. It is unnecessary, however, to go into a discussion of these exceptions, because of the reversal of the judgment upon matters already discussed. Such errors will not occur upon another trial. For the reasons stated, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE (Dissenting).—This case was reversed by my brethren, evidently, because of a charge read by the court, not in this case, but on the impanelment of petit juries for the several weeks of court, from which the special venire in this case was drawn, though the opinion also suggests that the court should have given appellant's requested instruction on communicated threats in connection with self-defense. Possibly it was intended to base the reversal on both of said grounds. I have previously stated my views in regard to a charge of this character. See Attaway v. State, 41 Texas Crim. Rep., 395. Concede, however, that the charge here complained of, in its criticism of the defense of apparent danger and reasonable doubt, was a disparagement of such defenses, and an enunciation of incorrect legal principles, yet I fail to see how said charge could possibly have operated to the injury of appellant. As stated before, said charge was not read to the jury on the trial of this case, but had previously been read on the impanelment of petit juries for the several weeks of the term of court. It is true, some of the special veniremen heard the charge read; but they were all examined as to this matter, and each of them stated on oath that he would be governed in the trial of the case by the charge given by the court in the case, and, if there was any antagonism in the principles announced in the charge previously read by the judge and the one given them in the case, that they would not be governed by that, but by the charge given in the case. More than this, I have been unable to discover in this record any communicated threats. I fail to see in the circumstances attending the homicide any apparent danger. Indeed, there is no self-defense in the case. The only real defense was that it was manslaughter, because of alleged previous insulting conduct of deceased towards the wife of appellant. Aside from this, the case is presented without any extenuating circumstances. Appellant was seeking deceased for the purpose of killing him, rode up behind him, and shot him in the back. Appellant himself testified (and this is all the evidence, so far as I am advised from the record, as to

any demonstration) that: When he rode up, "Harshaw was on horse-back, had his hand to his side, and jerked round. I killed Harshaw because he made that demonstration, and was on that road that morning. I do not know if I would have killed him if he had not made that demonstration." Again he says: "I was paying no attention. If Harshaw had a gun or a cannon, it was all the same to me. Harshaw was going along that road in front of me. I did not lope. I trotted right along. I had to overtake him." And again he says: "I did not go there for no good purpose. I expected to have a fight. I had been informed of it, and went there fixed for it. When I saw Harshaw first, he was probably 100 yards ahead of me. I was going faster than he." From other witnesses we are informed, in consonance with appellant's own testimony, that appellant on that morning was seeking deceased; that when he saw him he pursued and overtook him, and shot him in the back. According to the declarations of deceased, appellant shot before he saw him. This is the character of self-defense proved. The court gave a charge on self-defense which was correct. But appellant was not entitled, according to my view, to a charge on this subject at all; and, if the court had committed an error in the charge, it would not have been to his injury. To say, then, that some expressions of the court on some other occasion, in charging the petit juries or the grand jury, or a charge in some other case, because it may have been erroneous, as announcing incorrect legal principles, should be cause for reversing this case does not occur to me to be sound doctrine. Even an erroneous charge, given in the case, on self-defense, would not have been hurtful to appellant, because he was not entitled to a charge on that subject. According to my view, the jury gave credence to the only defense appellant had, which was manslaughter, and I believe the judgment ought to be affirmed.