J. B. ZIMMERMAN v. THE STATE.

No. 14986.   Delivered March 2, 1932.
Rehearing Denied June 15, 1932.
Reported in 51 S. W. (2d) 327.

The opinion states the case.

*R. W. Fairchild,* of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for nine years.

It was charged in the indictment, in substance, that appellant killed Mallie Nettles by causing dynamite to explode upon and against the said Mallie Nettles. In support of the allegations in the indictment the state offered proof as follows: The wife and stepdaughter of appellant had left appellant's home and taken up their abode in the house of deceased. Appellant was aware that it was the custom of deceased to build a fire in his kitchen stove in the morning. Placing some slippers on his feet for the purpose of preventing identification of his tracks, appellant went to the home of deceased at night and placed some dynamite in the kitchen stove by letting it down through the flue. When deceased built a fire in the stove on the following morning, the dynamite exploded and he was mortally wounded. Deceased died within four or five days. Appellant's written confession supported the allegations embraced in the indictment.

Testifying in his own behalf, appellant admitted that he went to the home of deceased and placed the dynamite in the kitchen stove, knowing that deceased would build a fire on the following morning. Appellant declared that deceased had taken his wife away from him and had broken up his home. He testified that he had been informed that his wife was living in adultery with deceased. According to his version, one of his children was being shunned by other children on account of the relations existing between deceased and his wife. A witness for appellant testified that she had seen deceased and appellant's wife having sexual intercourse, and had advised appellant of such fact. It appears that after appellant learned from this witness that deceased and his wife were having sexual intercourse, he (appellant) continued visiting his wife at deceased's home, and maintained friendly relations with deceased.

Before the jury was impaneled the trial judge delivered a lecture to the jury for the week. The special venire drawn in appellant's cause was present in the courtroom at the time. In his preliminary remarks to the jury for the week the trial judge advised them, in substance, that if any errors were committed in the trial court they would be corrected by the Court of Criminal Appeals. He admonished the jury that it would be improper for them, after returning verdicts, to sign affidavits impeaching such verdicts. He declared that it was not the inclination of the court to determine controversies between jurors as to improper conduct in the jury room. Further, he stated, in effect, that jurors and attorneys

would be in contempt of court if they made any effort to impeach the verdict of the jury in a given case. The court further advised the jurors that skillful attorneys could draw affidavits in such a manner as to make the juror ashamed he had placed his signature on such instruments. Again, the court advised the panel that the trial of cases cost the county money. Appellant's counsel, as shown by bill of exception No. 1, objected to the remarks of the court at the time they were made. The court declined to withdraw the remarks. Thereafter, on the same day, the jury in the present case was impaneled. On asking twenty of the jurors if they had heard the court's preliminary address to the jury for the week, all but three of the jurors answered in the affirmative. The seventeen jurors answering in the affirmative were challenged for cause. The challenge being overruled, appellant peremptorily challenged ten of the jurors. Out of these twenty jurors ten jurors were chosen, all save three having heard the preliminary remarks of the court. Thereafter the special venire list was exhausted and talesmen brought in. Among these talesmen were jurors who had been summoned for the week and who answered that they had heard the preliminary remarks of the court. Appellant challenged the talesmen for cause. Having exhausted his peremptory challenges, he was forced to take one juror who had heard the preliminary remarks of the court, and another juror whom he stated to the court was objectionable to him. Before taking these jurors, appellant's counsel requested the court to permit him to exercise further peremptory challenges. This request was denied. At a time when appellant had not exhausted his peremptory challenges, he failed to challenge peremptorily five jurors who had heard the preliminary remarks of the court. However, he had challenged these five jurors for cause. Appellant's action in failing to exercise his fifteen peremptory challenges on jurors who had heard the preliminary remarks of the court would appear to minimize the importance he attached to the effect of the remarks of the court.

The remarks of the trial judge were improper. Murphy v. State (Texas Crim. App.), 57 S. W., 967; Chapman v. State, 42 Texas Crim. Rep., 135, 57 S. W., 965. It was evidently the purpose of the learned trial judge, in addressing his remarks to the jury for the week, to impress upon them the importance of confining their discussion in a given case to the facts in evidence, and to prevent the jurors from filing self-stultifying affidavits which might bring about the annulment of verdicts. Further, the learned trial judge probably had in mind that it was improper for counsel to pry into the deliberations of the jury touching the arguments or reasons upon which their verdicts were based. However, the jury might have construed the remarks as a threat on the part of the trial judge to fine for contempt of court those guilty of attempting to set forth in a motion for a new trial misconduct of the jury when the subject of

such misconduct became a proper matter of investigation under the statute. In article 753, C. C. P., the grounds upon which a new trial may be demanded are set forth.. Among the grounds is misconduct of the jury. It has long been the practice pursued and sanctioned by judicial interpretation and statutory declaration that, upon the hearing of the motion for new trial, alleged misconduct of the jury is a proper subject of investigation through affidavits or oral testimony heard by the presiding judge. From this principle it is implied that the law sanctions the right of one against whom a verdict has been rendered to pursue the methods pointed out; that is, by affidavits of the members of the jury, to bring to the attention of the trial court the evidence of misconduct. This being a right, it is not within the power of the trial court to annul or abridge it. Moreover, the constitutional provision guaranteeing the right of counsel for one accused of crime carries with it the duty, when the rights of the counsel's client have been transgressed by misconduct of the jury, to bring the matter by legal means before the trial court to the end that an investigation may be made and the rights of the accused protected and preserved. The prohibition by the trial judge, under threat of contempt of court, against pursuing the means prescribed by law and sanctioned by precedents and statute to bring to the attention of the court upon the hearing of the motion for new trial the facts upon which reliance is had to show that the verdict of the jury is tainted by misconduct or by the violation of some statutory provision prescribed by article 753, supra, might have the effect of destroying or annuling the rights of the accused guaranteed by the laws and Constitution to a fair trial and the effective representation by counsel.

It has long been the practice of this court, in the pursuance of its duty under the Constitution, as understood, to zealously guard against perversion of the right of trial by jury and at the same time to prevent the annulment of verdicts by self-stultifying affidavits of jurors (Mitchell v. State, 36 Texas Crim. Rep., 278, 33 S. W., 367, 36 S. W., 456) or by prying into the deliberations of the jury touching the arguments or reasons upon which they base their verdict. (Jack v. State, 20 Texas App., 656). Doubtless the trial court has, at times, a very delicate duty to perform in balancing the evidence which may be properly heard and that which should be excluded. In the exercise of such duty the trial court is entitled to a liberal share of discretion, but his power in the premises falls short of arbitrarily forbidding that which in a proper case the law expressly permits.

However, it is not made to appear that in the present instance the rights of the accused were impinged to his detriment. It does not appear that any misconduct of the jury is claimed, nor that any effort to obtain information was attempted or thwarted. There was no effort in the motion for new trial to have jurors called or interrogated; nor is it

averred that from any source the accused or his counsel learned of acts impairing the privacy or purity of the jury. Neither does it seem, in the light of the evidence, that the verdict was influenced by causes other than those legitimately available to the jury. In the state of the record, we would not feel warranted in holding that the bill of exception manifests reversible error.

Bill of exception No. 2 recites that the court refused to permit appellant to ask the jurors if they believed in protecting the honor of the home and the chastity of womanhood. This bill of exception merely sets forth the question proposed to be asked and the court's refusal, together with appellant's exception. No circumstances are set forth in the bill to show that it was proper to make the inquiry, or that answer thereto would have aided appellant in selecting a jury.

Appellant sought to invoke the provisions of article 1220, P. C., which we quote: "Homicide is justifiable when committed by the husband upon one taken in the act of adultery with the wife, provided the killing take place before the parties to the act have separated. Such circumstance cannot justify a homicide where it appears that there has been, on the part of the husband, any connivance in or assent to the adulterous connection."

A charge under the provisions of the foregoing article was not called for by the evidence. According to his version of the transaction, appellant had known of the illicit relations existing between his wife and deceased some time prior to the homicide. He went to the house with the preconceived design to place the dynamite in the kitchen stove. He said that he crawled under the kitchen and listened to see if he could hear deceased snoring; that he did not hear him and decided that deceased was not in his bed. He testified, in effect, that he thought at the time that deceased was in bed with his wife. He then went to the roof of the house and let the dynamite down into the stove through the flue, his idea being that when deceased built a fire the following morning the dynamite would explode.

In the charge the court defined malice aforethought, and instructed the jury, in substance, that in any murder case the punishment could not be greater than confinement in the penitentiary for five years unless from all the facts and circumstances in evidence the jury believed beyond a reasonable doubt that the defendant was prompted by and acted with malice aforethought. Further the jury were instructed, in substance, that, if they believed beyond a reasonable doubt that defendant, with malice aforethought, voluntarily killed deceased by causing dynamite to explode upon and against him, to find him guilty of murder and assess his punishment at death or confinement in the penitentiary for life or for any term not less than two years. Following the charge last mentioned, the jury were instructed as follows: "But, if from the evidence you

believe beyond a reasonable doubt that the defendant, J. B. Zimmerman on or about the 19 day of December, 1930, in the County of Polk and State of Texas, without malice aforethought, as hereinbefore defined, did voluntarily kill the said Mallie Nettles by causing dynamite to explode upon and against the said Mallie Nettles as alleged in the indictment, you will find the defendant guilty of murder without malice and assess his punishment at confinement in the penitentiary for not less than two nor more than five years."

Appellant objected to the charge last quoted on the ground that it had the effect of shifting the burden of proof. Immediately following the foregoing charge, the jury were instructed as follows: "You are further charged that even though you should find the defendant guilty of murder, yet, unless you find from all the facts and circumstances in evidence in this case, beyond a reasonable doubt that the defendant in killing the deceased, if he did, was prompted and acted with his malice aforethought, as the same is hereinbefore defined, then you cannot assess the punishment at a longer period than five years. If you have a reasonable doubt that the defendant was prompted by and acted with his malice aforethought, you must give the benefit of such doubt to the defendant and fix his punishment at some term of years in the penitentiary not less than two nor more than five."

Considering the paragraphs of the charge together, the opinion is expressed that it was made plain to the jury that, believing the appellant guilty of murder, they should resolve any reasonable doubt on the question as to whether he was actuated by malice aforethought in favor of appellant, and, in the event they entertained such doubt, assess the punishment at not more than five years confinement in the penitentiary. Lagrone v. State, 84 Texas Crim. Rep., 609, 209 S. W., 411; Hendricks v. State, 69 Texas Crim. Rep., 209, 154 S. W., 1005. We are not giving our approval to the charge. However, we express the opinion that it could not have misled the jury..

A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

Morrow, P. J., absent.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—On the 19th of December, 1930, the deceased, Mallie Nettles, was killed. The conviction of the appellant for the murder of Nettles was concluded on the 10th day of August,

1931. The statement of facts was signed on the 6th day of November, 1931. It is in question and answer form and contains 283 pages of typewritten matter. In it are embraced colloquies between judge and counsel, rulings of the court on the evidence, and much matter that should have been eliminated in the preparation of a statement of facts if the law as prescribed by chapter 34, Acts of Forty-second Legislature, First Called Session, which became effective August 17, 1931 (Vernon's Ann. Civ. St., arts. 2237-2239, and note, Vernon's Ann. P. C., art. 760), had been followed. The act in question re-established the law governing the preparation of statements of facts as it was embraced in article 760, C. C. P., 1925, and article 2237, Revised Civil Statutes, 1925, which practice had existed for many years previous to that time. The authority of this court to consider the statement of facts in the present case by reason of the statute first above mentioned is open to some question. However, to the best of our ability, we have endeavored to learn from the document the evidence that was received with the sanction of the trial court.

In an extrajudicial confession the appellant admitted that he placed dynamite connected with a fuse in the kitchen stove in the home of the deceased. It appeared from other testimony that early in the morning of the 19th of December, 1930, the dynamite exploded and fatally wounded the deceased. There lived in the house at the time the wife of the appellant and her four children, the married daughter of the appellant's wife, her husband two two children, and the deceased, Nettles.

The appellant testified upon the witness stand, going into great detail touching the preparation that he made made for the destruction of Nettles and the precaution taken by him to prevent the discovery of his identity as the perpetrator of the crime. As the motive for the crime, the appellant claimed that his wife and Nettles were living in adultery. At the time of the tragedy, the appellant's wife and her younger children had been living in the home of the deceased for about a week. Her daughter Mrs. Cleveland and her family had resided there for several months. Touching the improper relations between the deceased and the appellant's wife, the evidence is conflicting. The appellant's claim that he had received information supporting his theory was quit meagre and inconclusive and was combatted by his stepdaughter and other witnesses. The appellant and his wife had previously been separated, and after their separation in the present instance, she removed to the Nettles' home. The appellant had been to the Nettles' home after the separation and had engaged in friendly conversation with Nettles, and assisted him in bringing water for use of Mrs. Zimmerman in washing clothes. Appellant was familiar with the household arrangements in the Nettles' home.

The only defense suggested is by virtue of the statute, article 1220, P. C., 1925, which exculpates a husband who slays his wife's paramour

when taken by the husband in adultery. It is not thought that there is evidence in the record calling for the application of this statute. At the time the deceased was killed, the appellant was at his home a quarter of a mile distant. The death of the deceased occurred while he was performing the innocent household duty of building a fire in the kitchen stove. The cause of his death was a trap set by the appellant, which might have been intended to destroy the life of Nettles by explosion and which might have taken place at a time when it would destroy or maim any one or more of the ten persons (six of them innocent children) who were present in the small dwelling house occupied by the deceased and the members of the appelalnt's family.

As indicated in the original opinion, the remarks of the court cannot be approved, but it is not in every case that remarks of a similar nature justified a reversal of the judgment of conviction. See Redwine v. State, 85 Texas Crim. Rep., 437, 213 S. W., 636; Reed v. State, 74 Texas Crim. Rep., 242, 168 S. W., 541. The charge of the court which was given in the present case accurately states the law applicable to the evidence before the jury. Even in a charge given to the jury in the specific case on trial, it is not lawful to reverse the judgment for a fault in the charge "unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." See article 666, C. C. P., 1925. The right of the Legislature to enact the statute last mentioned and the obligation of the courts to observe and apply it, has often been affirmed. See Davis v. State, 107 Texas Crim. Rep., 389, 296 S. W., 605, and cases collated. No jury, in the discharge of its duty, would have been justified in rendering in the present case any verdict other than one convicting the appellant of murder. The court instructed the jury that, if they had a reasonable doubt whether the appellant acted upon malice aforethought, there could be assessed against him no penalty greater than confinement in the penitentiary for five years. The jury found the appellant guilty of murder with malice aforethought and assessed the penalty at confinement in the penitentiary for nine years. Viewed in the light of the facts, it is thought that the verdict of the jury makes clear the duty of this court to give application to the statute mentioned above. Few cases have come before this court in which the facts have more accurately come within the purview of that phase of the law which characterizes malice aforethought as an act done by one whose heart is devoid of social duty and fatally bent on mischief. In that respect, the facts call to mind the case of Banks v. State, 85 Texas Crim. Rep., 167, 211 S. W., 217, 218, 5 A. L. R., 600, in which it is said: "The shame of the world recently has been the unwarranted killing of persons who were noncombatants and who were doing nothing and were not capable of inflicting injury upon their slayers. Of

kindred spirit is he who can shoot in the darkness into houses, crowds, or trains and recklessly send into eternity those whom he does not know and against whom he has no sort of reason for directing his malevolence."

In the instant case, the penalty assessed is merciful and it is thought that it is the duty of the court to uphold it.

The motion for rehearing is overruled.

*Overruled.*