### CLARK FARRAR v. THE STATE.

*No. 3634. Decided December 13.*

1. **Practice.**—Bill of Exceptions reserved to the exclusion of testimony must be sufficiently specific to disclose the substance and nature of the excluded testimony and to make manifest its materiality to the defense. See the statement of the case for a bill of exception *held* sufficiently specific to bring the matter complained of in review. And note that, in view of the evidence on the trial, the exclusion of the proposed testimony was error.

2. **Same.**—Charge of the Court is sufficient if it is couched in language which conveys the meaning of the law and which a jury would not be likely to misconstrue. See the statement of the case for a charge of the court *held* sufficient under this rule.

3. **Same.**—A requested instruction, however correct and applicable to the case it may be, is properly refused if its substance is embraced in the general charge.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. Hall.

The conviction was for assault with intent to murder, and the penalty assessed by the verdict was a term of two years in the penitentiary.

J. R. Corry, the alleged injured party, testified, in substance, that during the year 1890 the defendant was a tenant on his farm. At the time of this difficulty, about October 20, 1890, the defendant had gathered his share of the corn and left witness's share standing in the field. Witness met the defendant at church on the night preceding the difficulty, and told him that his religion ought to make him help witness gather his

rent corn.   Defendant replied that he had gone to the field once to help witness as per agreement, but that witness failed to put in an appearance, and that he, witness, might now gather the said corn himself.   While in his field gathering the said corn on the next morning the witness observed the defendant and one Truitt in conversation outside of but near the field. Soon afterwards the defendant, on horseback, came to where the witness was and remarked to him, "So you think my religion ought to make me help gather this corn?"   Witness replied, "I do; I told you that before." Defendant said, "Well, I think my religion will make me do that."   He then proceeded to curse and abuse the witness, calling him among other names a damned son-of-a-bitch.   Witness then said to defendant: "You have come down here for a row.   I have tried to gather this corn; now I will gather it by law."   Witness then started to the end of the corn row opposite from his house where he had left his coat.   Defendant rode along in the same direction, but a short distance to the witness's left.   He continued to curse and abuse witness.   Finally he placed his right hand near his saddle pocket, and witness saw what he took to be a pistol.   He then stopped and called twice for Truitt in a loud voice, but received no answer.   He then said to defendant, "You have a pistol, and I am going to town and have you arrested."   Defendant, cursing and denouncing witness, said to him, "You wont get to town."   The witness, abandoning his intention to get his coat, turned and started toward his house.   Defendant turned and followed the witness, cursing and abusing him and holding his pistol in his hand.   When the witness crossed the small branch that traversed his field the defendant called to him to stop.   Witness did so, and turned to face the defendant.   The defendant then approached within twenty feet of witness, looked around as if to see if anybody was in sight, said, "I am going to shoot you," and fired a shot at witness which did not take effect.   Witness threw up his hands and said to defendant, "You are a coward to shoot me when I am unarmed and have nothing with which to defend myself."   Defendant then cursed witness, rode up closer, and shot witness back of the left shoulder.   He then snapped his pistol twice at witness, and then proceeded to examine his weapon. While he was doing this witness rushed upon him, determined to disarm him if possible, but was met by a blow on the head with the pistol.   Witness then went rapidly home, and defendant rode off toward Hillsboro. The witness declared that he did not have either a pistol or a knife on his person, and denied that he made a hostile demonstration toward defendant, or that he seized a stone or threw one at defendant, or that he cursed the defendant or called him a son-of-a-bitch.   The wound inflicted upon the witness by the defendant was a superficial one.

William Truitt testified for the defense that a few minutes before the difficulty he, in his wagon, met the defendant on horseback near the field of J. R. Corry, in which field at the time Corry was pulling corn.   When

·defendant left witness he went into the field where Corry was, and wit-ness started home.   He had not gone far when he heard or thought he heard some person call him.  ˙ Looking into the field witness saw Corry ·standing near the defendant, who was on his horse.   They appeared to be ·engaged in a wordy altercation.   Witness then started on home.   About the time he started he heard one man call the other a damned son-of-a-bitch, and while he was not positive he thought that he recognized in those words the voice of J. R. Corry.   By this time the parties had passed be-·yond sight of the witness.   Witness then went to a point in the field from which he could see the parties.   They were close together.   Corry made a motion with his hands as if to strike the defendant.   The distance was ·so great that witness was unable to state positively that the motion of ·Corry's hand was an effort to strike.   Soon afterwards witness heard two pistol shots fired in such quick succession that he thought the defendant ·and Corry had each fired a shot.   Witness then observed the parties closely. Defendant did not advance upon Corry after the shooting.   On the con-·trary Corry advanced upon the defendant, and made or appeared to make ·an effort to strike defendant.   Immediately afterwards Corry ran off to-·ward his house, and defendant rode off toward Hillsboro.   The defend-·ant professed religion during the summer preceding this trouble, since which time the witness had never heard him use profane language or swear ·an oath.

Testifying in his own behalf, the witness said that Corry told him on the night before the difficulty that he, Corry, thought his, witness's, religion ·ought to make him help gather the corn in the field.   After leaving Truitt ·on the morning of the difficulty, as stated by Truitt, the witness went to ·Corry in the field and said to him:  "Mr. Corry, you think my religion should make me help gather this corn.  I think so too."  Corry then began to curse witness; called him a "damned son-of-a-bitch," and said to him, "You have come here for a row, and if you will get down (from your horse) you will get it."   Witness replied, "I have not come here for a row, but if nothing but a row will do you, I guess I can accommodate you."   Wit-ness then dismounted and he and Corry started towards each other, Corry ·advancing with an open knife in his hand.   Witness, seeing the knife, ·stepped back to his horse and put his hand in his saddle pocket.   Corry said:  "You have a pistol.  I will go to town and have this corn gath-·ered by law."   He then started up the corn rows in a direction opposite ·from his house.   Witness followed, talking with Corry until the latter became angry, when he picked up a stone, turned completely around, and ·started toward his house.   The witness followed until they reached the turn-row near a small branch.   Corry crossed the branch and witness started up the turn-row towards his brother Jim Farrar's house.   Corry stopped and said to witness, "You damned cowardly son-of-a-bitch, I thought you would run off."   Witness turned and said to Corry, "That

is too hard to take and you must take it back." Corry in reply cursed witness, and said that he would retract nothing. The witness then started to get off his horse, when Corry began to throw stones at him. With a stone as large as a man's fist Corry struck witness on the left elbow. The blow deadened the arm and produced a soreness that lasted two or three days. Witness then drew his pistol and fired two shots at Corry. Corry threw up his hands and asked witness not to shoot again. Witness replied that he would shoot no more, when Corry walked up to his right and tried to cut his, witness's, throat, inflicting a small scratch. Witness then struck Corry over the head with his pistol and rode directly to Hillsboro and surrendered.

Continuing, the witness said that the difficulty occurred on ground covered with stones, and that he considered himself in danger of serious bodily harm at the time he drew his pistol and fired. He made no effort to fire more than the two shots mentioned. He still had four shots left in his pistol and could easily have fired them at Corry if he had felt inclined to do so. Previous to this time witness and Corry had agreed to meet in the field on a particular day to gather the rent corn belonging to Corry. When Corry spoke to witness on the preceding night about gathering the corn the witness said to him: "I went to the field once according to agreement to help you and waited half a day for you. You did not come, and now you can gather it yourself." Upon reflection, however, the witness thought it right to help Corry gather the corn.

George Patterson, deputy marshal of Hillsboro, testified for the defense that the defendant surrendered to him on the day of the difficulty. Witness then observed a scratch on the right hand side of defendant's throat.

The bill of exception referred to in the first head note reads as follows: "Be it remembered that on the trial of the above entitled and numbered cause the witness William Truitt was on the stand at the instance of the defendant, and the defendant's counsel offered to prove by said witness the following facts: That a short time before the difficulty between the defendant and the prosecuting witness, J. R. Corry, and in the road by the field where Corry was pulling corn, and in sight of said Corry pulling corn, defendant had a conversation with Truitt, in which he asked Truitt's advice as to whether he ought to go to help Corry gather the rent corn (which Corry was then gathering), and that said Truitt advised defendant to go down there and help gather the corn. Defendant's counsel stated that in connection with the aforesaid fact they expected to prove that defendant did go to where Corry was in accordance with said advice. To all of this evidence the State's counsel objected because immaterial," etc.

The charge of the court referred to in the second head note reads as follows: "The defendant is charged by indictment with an assault with the intent to murder one J. R. Corry, alleged to have occurred on or about October 20, 1890, in the county of Hill and State of Texas. To

this charge the defendant has pleaded not guilty, and under this plea the law presumes him innocent until his guilt is established by legal evidence beyond a reasonable doubt.

"That you may understand the nature of the offense with which the defendant is charged, it is necessary that the court shall define the offense of assault and of murder.

"The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of the violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with the ability to commit a battery, is an assault.

"By the terms 'coupled with the ability to commit' as used above is meant that the person making the assault must be in such a position that, if not prevented, he may inflict a battery upon the person assaulted, and that he must be within such distance of the person assailed as to make it within his power to commit the battery by the use of the means with which he attempts it.

"The law declares that every person with a sound memory and discretion who shall unlawfully kill any reasonable creature in being within this State, with malice aforethought, either express or implied, shall be deemed guilty of murder.

"Murder is distinguishable from every other species of homicide by the absence of the circumstances which reduce the offense to negligent homicide or manslaughter or which excuse or justify the homicide.

"Malice, in its legal sense, as the word is used in this charge, means the intentional doing of a wrongful act towards another without legal excuse or justification.

"Manslaughter is voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law. By the expression 'under the immediate influence of sudden passion' as herein used is meant that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation; the act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated by passion arising by some other provocation or a provocation given by some other than the party killed. The passion intended is either of the emotions of the mind known as anger, rage, sudden resentment, or terror rendering the mind incapable of cool reflection. By the expression 'adequate cause' is meant such as would commonly produce a degree of rage, anger, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, unaccompanied by vio-

lence, are not adequate causes; but an assault and battery causing pain or bloodshed is an adequate cause sufficient to reduce a homicide from the degree of murder to the grade of manslaughter. When one person accidentally kills another such killing in law is excusable. And when one person kills another in defense of his life or to protect his person from serious bodily injury, such killing is in law justifiable. When one person intentionally and unlawfully kills another under circumstances which show no mitigation, that is, under circumstances not sufficient of themselves to reduce the homicide to the offense of manslaughter as hereinbefore explained, and under circumstances which neither excuse nor justify the homicide as hereinbefore explained, then the law will infer that such killing was done with malice aforethought, and a homicide so committed will be murder.

"You are instructed that if you believe from the evidence beyond a reasonable doubt that the defendant, in the county of Hill, in the State of Texas, about the time alleged in the indictment, made an assault as hereinbefore explained upon one J. R. Corry, with the intent then and there to take the life of said Corry, and shall further believe from the evidence beyond a reasonable doubt that had the defendant then killed said Corry, the offense, if any, would have been murder as hereinbefore explained, then in case you so believe from the evidence you will find the defendant guilty of an assault with intent to murder as charged in the indictment, and you will assess his punishment at confinement in the penitentiary for any time not less than two years and not more than seven years, and so say by your verdict. If you have a reasonable doubt as to whether the defendant is guilty of an assault with intent to murder, then you will acquit him of that offense, and next consider whether he is guilty of an aggravated assault or whether he was justified in shooting the said Corry.

"The court instructs you that if you shall acquit the defendant of an assault with intent to murder, but shall believe from the evidence beyond a reasonable doubt that from all the circumstances surrounding the defendant there was aroused in the mind of defendant such sudden passion as to render his mind incapable of cool reflection, and acting upon the impulse of such passion, if he made an assault upon said Corry as charged in this indictment, then you will find him guilty of an aggravated assault, and you will assess his punishment at a fine of not less than $25 and not more than $1000, or by imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment, and so say by your verdict.

"If from the acts of said Corry, if any, or if from his words coupled with his acts, if any, there was created in the mind of the defendant a reasonable apprehension that he was in danger of losing his life or of suffering serious bodily harm at the hands of said Corry, then he had the

right to defend himself from such danger or apparent danger as it then appeared to him, defendant. And if you believe that defendant fired upon said Corry as a means of defense, believing at the time he did so, if he did so do, that he was in danger of losing his life or of suffering serious bodily injury at the hands of Corry, then you will acquit him, unless you believe from the evidence beyond a reasonable doubt that the defendant sought a meeting with said Corry for the purpose of provoking a difficulty with said Corry, with the intent to take the life of said Corry or to do him such serious bodily injury as might end in the death of said Corry. And if you so believe from the evidence beyond a reasonable doubt, then you are instructed he would not be able to justify on the ground that he acted in self-defense; but if he had no such intention in seeking to meet the said Corry, then his right of self-defense would not be forfeited, and he could stand his ground and use such means of defense as seemed to him necessary to protect himself from danger or what appeared to him to be danger." * * *

The refused requested charge reads as follows: "You are further instructed that it is not essential to the right of self-defense that the danger should in fact exist. If you believe from the evidence that it reasonably appeared from the circumstances that danger did exist, though in fact the defendant was in no danger of death or serious bodily injury, the defendent would have the same right to defend against it, and to the same extent that he would have if the danger was real. And in passing upon this question it is your duty to put yourselves in the position of the defendant at the time of the difficulty, and not judge the appearance of danger as it appears to you sitting in the jury box. And if you have a reasonable doubt as to the guilt of the defendant, after placing yourselves as near as you can in his place at the time the difficulty occurred, then you will acquit the defendant, and so say by your verdict."

*R. P. Hodge, W. C. Wear* and *B. D. Tarlton,* for appellant.

*W. L. Davidson,* Assistant Attorney-General for the State.

WILLSON, JUDGE.—This being a prosecution and conviction for assault with intent to murder, a material inquiry and issue in the case was whether the defendant went to the field where the injured party was, and where the difficulty occurred, with innocent intent or with the evil intent of provoking a difficulty with said injured party.

Upon this issue the defendant offered to prove by one Truitt that said Truitt advised him to go to said field where Corry, the injured party, was gathering corn, and help said Corry gather corn, and defendant proposed to supplement this proof by proof that he immediately acted upon said advice, going at once to where said Corry was, and for the purpose of help-

ing said Corry to gather corn. This proposed testimony was, upon objection made thereto by the State, rejected, and defendant saved a bill of exception to the ruling.

It is contended by the Assistant Attorney-General that the bill of exception is defective and should not be considered, because it does not specifically state the purpose for which said testimony was offered and does not show the relevancy and materiality of said testimony. We think the bill is sufficiently explicit and full, stating all the facts essential to enable this court to revise the said ruling. We think the bill shows that the offered testimony was relevant, material to the defendant, and admissible for the purpose of showing that defendant went to where Corry was with innocent intent and for a lawful purpose. It was testimony explanatory of defendant's act of going to where Corry was gathering corn. It was *res gestæ* of that act, and tended to show that said act was innocent and lawful. Irby v. The State, 25 Texas Ct. App., 203; Gillian v. The State, 3 Texas Ct. App., 132; Williams v. The State, 4 Texas Ct. App., 5. It was material error to reject said testimony in view of the evidence upon which this conviction is based.

With respect to the charge of the court, we think it is sufficient and correct. It presents the law of the case substantially, and while it is not in some particulars in the exact language of precedents, it is in language which conveys the meaning of the law and which a jury would not be likely to misconstrue. The instruction requested by the defendant was correct and appropriate, but was, we think, contained substantially in the main charge, and it was not error to refuse to give it.

Because the court erred in rejecting the proposed testimony of the witness Truitt, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.