## WALTER STOUGH et ux. v. STATE.

No. A-10070.  Sept. 2, 1942.
(128 P. 2d 1028.)

W. C. Peters, of Tulsa, for defendants.

Mac Q. Williamson, Atty. Gen., Jess Pullen and Sam H. Lattimore, Asst. Attys. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for the State.

BAREFOOT, P. J. Defendants, Walter Stough and Jackie Stough, were charged in the district court of Tulsa county with the crime of conjoint robbery by means and use of force and fear, were tried, convicted and sentenced to serve a term of ten years in the penitentiary, and have appealed.

The record discloses that the defendants, Walter Stough and Jackie Stough, were husband and wife. That they were charged jointly, in Tulsa county, with Harlan Arnett and Bonnie Arnett, husband and wife, with conjoint robbery of R. F. Keene, in the city of Tulsa, Okla., on the night of January 2, 1940, by beating and wounding him with their hands and fists, and stealing from him one Gillette razor of the value of $15 and 75 cents in money.

Defendants were arrested on the 3rd day of January, 1940. Defendant Walter Stough, being unable to make bond, has remained in jail until he was convicted in this case on the 4th day of December, 1940, and both he and

the defendant Jackie Stough, being unable to make bond, were sent to the State Penitentiary at McAlester, on the 10th day of January, 1941, where they have remained pending this appeal.

The record further reveals that the defendants were first tried in the district court of Tulsa county on the 24th day of May, 1940, being defended by the public defender of Tulsa county. The jury was unable to agree. The case was finally submitted to the jury at 5:55 p.m., on May 24, 1940, and after deliberation until about midnight, the jury was called into court by the trial judge, who, upon being informed that they were unable to agree upon a verdict, discharged the jury. Neither the defendant Walter Stough, who was in the county jail at the time, nor his attorney, nor the defendant Jackie Stough, nor her attorney, was present at the time the court took this action and discharged the jury. The record in the court clerk's office with reference to this action, as testified to by the court clerk, shows as follows:

"A. May 24, 1940, Jury returns into court, reports they are unable to agree on a verdict. Case declared a mistrial and jury discharged."

This is the only record with reference to the discharge of the jury appearing in the office of the court clerk. The record is not full and complete, but it does show the proceedings and the evidence taken upon the motion or plea of former jeopardy filed in this case on the 14th day of November, 1940. No reply was filed by the state to this motion and no evidence was offered by the state in rebuttal at the time of the hearing thereon. From the entire record, it cannot be denied that at the time the jury was discharged by the trial judge, the defendant Walter Stough was confined in the county jail and was not brought into the courtroom until the jury had been

discharged and were leaving the courtroom. The defendant Jackie Stough, who was at liberty on bond during the trial, had remained in the courtroom, but with others had gone across the street for the purpose of getting something to eat, and the jury was discharged before she returned to the courtroom. There is nothing in the record to affirmatively show the presence of either of the defendants or their counsel at the time of the discharge of the jury, or that any attempt was made to have them present at that time.

The record further reveals that the defendants were tried the second time on October 7, 1940, and were convicted and the jury assessed the punishment at five years in the penitentiary. On the 23rd day of October, 1940, motion for new trial was sustained and a new trial granted defendants. The record does not reveal the reason for this action. The following journal entry is shown in the record.

"Motion for new trial sustained, and a new trial granted. Bond of defendants, Harlan Arnett, Bonnie Arnett, Walter Stough and Jackie Stough and each of them increased to $5,000.00, said defendants and each of them ordered committed to the Tulsa County jail in lieu of bond."

The final and third trial was had on the 3rd day of December, 1940, and defendants were convicted, and each given a sentence of ten years in the State Penitentiary, from which this appeal has been perfected.

The question now presented to the court is whether the trial court erred in refusing to sustain the plea of former jeopardy, which was presented before the trial of this case on the 3rd day of December, 1940, in accordance with the facts as above stated, and second, whether or not the defendants have waived this right by reason of

having gone to trial on the 7th day of October, 1940, not having filed the plea of former jeopardy at that time, or, in other words, can defendants now raise this question by reason of not having raised the same at their second trial on the 7th day of October, 1940?

An examination of the authorities reveals that there is a conflict of opinion as to the issues herein stated. Some of this conflict may be brought about by reason of the difference in the statutes, and in the absence of provisions in the statutes in others.

This court may not have passed directly upon the question at issue, and upon exact facts as here presented, but upon numerous occasions the statutes herein quoted have been construed by this court, and a review of those decisions throws light upon the question here involved.

In the early case of Humphrey v. State, 3 Okla. Cr. 504, 106 P. 978, 139 Am. St. Rep. 972, Judge Owen wrote the opinion of the court and it was concurred in by Presiding Judge Furman and Judge Doyle. In that case the transcript of the clerk's minutes failed to disclose the presence of the defendant in court during the argument of counsel and when the verdict was returned and received by the court. This case followed the rule theretofore announced by the Territorial Court in Day v. Territory, 2 Okla. 409, 410, 37 P. 806, and Le Roy v. Territory, 3 Okla. 596, 41 P. 612. The court said [ 3 Okla. Cr. 504, 106 P. 979, 139 Am. St. Rep. 972]:

"It may appear technical to reverse the case for the failure of the record to show the presence of the defendant, when in all probability the defendant was present at each step taken during the trial. Courts of last resort must establish precedents under which innocent men are to be tried. The law presumes every man innocent, and this presumption clings to him until overcome by competent evidence in a fair trial conducted according to

law. Even though the evidence in this case is sufficient to warrant the verdict of guilty, yet we must not declare a rule in this case that would deprive an innocent man of any substantial right. It is not the fault of appellate courts when such a precedent must be declared in a case where the proof shows the defendant guilty. The fault, if any there be, is with the trial court, the clerk, and the prosecuting attorney in their failure to have the record speak the truth."

In the case of Loyd v. State, 6 Okla. Cr. 76, 116 P. 959, Presiding Judge Furman announces the conditions that must exist before jeopardy attaches:

"A defendant cannot twice be put in jeopardy of life and liberty for the same offense, but before jeopardy attaches each of the following conditions must exist: First, the defendant must be put upon trial before a court of competent jurisdiction; second, the indictment or information against the defendant must be sufficient to sustain a conviction; third, the jury must have been impaneled and sworn to try the case; fourth, after having been impaneled and sworn the jury must have been unnecessarily discharged by the court; fifth, such discharge of the jury must have been without the consent of the defendant. When these things concur, then the discharge of the jury constitutes jeopardy and operates as an acquittal of the defendant, and he cannot again be placed upon trial for the same offense."

These same principles were announced by Judge Edwards in the case of State v. Brooks, 38 Okla. Cr. 302, 260 P. 785.

In the case of Goodman v. State, 41 Okla. Cr. 405, 273 P. 900, Judge Davenport, in writing the opinion of the court, had before him facts not exactly like those here, but somewhat similar. The jury, after some time of deliberation, sent a note and asked with reference to the case. They were further instructed by the court. They did not agree upon a verdict and retired for the night

and the next morning sent a note to the court asking if they could give the defendant 30 days in jail. Whereupon, the trial judge said to the jury:

"Gentlemen, this is all foolishness, you have been out on this case for several hours; there is no use asking foolish questions. You are discharged from the jury, and discharged from the panel. We have no use for you around the court. Go and get your pay."

This action of the court in discharging the jury was excepted to by the defendant and the same was made a basis of a plea of former jeopardy. The court in its opinion said:

"The question to be determined is, Was the action of the court such an abuse of discretion as to operate as an acquittal of the defendant? The testimony shows that the jury had not been considering the case for any great length of time, and did not consider it very long after they returned to the jury room on the morning of the 19th of November, 1924, when the jury was called in by the court and discharged. The court did not attempt to answer the jury on the question as to whether or not they could give the defendant 30 days in jail, but, instead of answering the question, discharged the jury. The question argued and urged by the defendant is not a new question in this state. In the early territorial days, in the case of Schrieber v. Clapp, 13 Okla. [215], 218, 74 P. [316], 317, Judge Burford, speaking for the Supreme Court of Oklahoma Territory, said:

" 'The general rule is that the prisoner has been put in jeopardy when he has been put upon trial before a court of competent jurisdiction, upon an indictment or information sufficient to sustain a conviction, and the jury has been empanelled and sworn to try the case, and the jury is discharged without sufficient cause, and without the defendant's consent; and such discharge of the jury, although improper, results in an acquittal of the defendant.' Cooley, Const. Lim. (6th Ed.) 399; Teat v. State, 53 Miss. [439], 453, 24 Am. Rep. 708; Whitmore v. State, 43 Ark. 271. * * *

"It is not disputed that conditions may arise where the court would be justified in discharging the jury. It will be seen that authority to discharge exists under the statute, if at the expiration of such time as the court deems proper it satisfactorily appears that there is no reasonable probability that the jury can agree. The question as to whether they have been kept together, and where there is no reasonable probability they can agree, are judicial questions. These questions cannot be arbitrarily determined by the court, but must be determined by the court from the facts and circumstances of the particular case, taking into consideration the length of time the jury has been considering the case and the probability of reaching a verdict. The court cannot, at his pleasure, without some facts upon which to predicate its action, summarily discharge the jury before the jury has reported to the court it is unable to reach a verdict. * * *

"We hold that the jury was unnecessarily discharged, over the protest and objection of the defendant, and that the discharge of the jury operated as an acquittal of the defendant, and that he could not be again placed upon trial for the same offense. Love v. State, 41 Okla. Cr. 291, 272 P. 1035."

While the facts in the cases from this court are not identical with the facts of the case at bar, they do construe statutes of this state and there is a strong tendency in construing them to hold that defendant should not be deprived of the right to be present in person during the proceedings of his trial, and at the time the verdict of the jury is received, in order that he may take such exceptions and action as he and his counsel deem advisable to properly protect his interest. All of the courts throughout the ages have announced this principle, and it is a right which the defendant has under the Constitution and statutes of this state. His privilege of waiving this right will be discussed hereafter.

The statute under which defendants were charged is

Oklahoma Statutes, 1931, sec. 2552, O. S. A. (Stat. 1941) Title 21, sec. 800, and is as follows:

"Whenever two or more persons conjointly commit a robbery or where the whole number of persons conjointly commits a robbery and persons present and aiding such robbery amount to two or more, each and either of such persons is punishable by imprisonment in the penitentiary for not less than five years nor more than fifty years."

Some of the statutes cited and pertinent to the issue in this case are:

Oklahoma Statutes 1931, sec. 3087, O. S. A. (Stat. 1941) Title 22, sec. 896, as follows:

"Except as provided in the last section, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict, and rendered it in open court, unless by the consent of both parties entered upon the minutes, or unless at the expiration of such time as the court deems proper, it satisfactorily appear that there is no reasonable probability that the jury can agree."

Section 21, art. 2, of the Constitution is as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

Oklahoma Statutes 1931, sec. 3053, O. S. A. (Stat. 1941) Title 22, sec. 583, provides:

"If the indictment or information is for a felony, the defendant must be personally present at the trial, but if for a misdemeanor not punishable by imprisonment, the trial may be had in the absence of the defendant; if, however, his presence is necessary for the purpose of identification, the court may, upon application of the county attorney, by an order or warrant, require the personal attendance of the defendant at the trial."

We have carefully read the two leading cases cited in the state's brief as upholding their contention. The first to uphold the contention that plea of former jeopardy does not apply, State v. Farne, 190 S. C. 75, 1 S. E. 2d 912, and the case of Territory v. Lobato, 17 N. M. 666, 134 P. 222, L.R.A. 1917A, 1226, 1232, to uphold the contention that the defendants waived their right to a plea of former jeopardy by going to trial on October 7, 1940, without raising this issue.

The Farne Case is cited as the leading case, and though the facts are not identical, it does uphold the plea that in a case of this kind the plea of former jeopardy should not be sustained and bases the decision principally upon the fact that the defendant should not have been, and was not, prejudiced by his absence. That if he had been present, he could not have prevented the court from discharging the jury, acting within its discretion. This decision quotes and relies upon the case of Yarbrough v. Commonwealth, 89 Ky. 151, 12 S. W. 143, 25 Am. St. Rep. 524, and State v. Vaughan, 29 Iowa 286, and State v. White, 19 Kan. 445, 27 Am. Rep. 137.

The facts in the Farne Case were somewhat different than in the instant case. In that case counsel for defendant was present in the courtroom from the time the case had been submitted to the jury and on two occasions prior to their discharge had waived the presence of the defendant. When the jury was formally discharged he was present, but was not specifically called upon by the court to waive the presence of the defendant. In the Vaughan Case, the jury had been out for a much longer time than in the case at bar. The record discloses that they were asked "if they could agree upon a verdict, when one of the jury said they could not. They were then asked how they stood, when the foreman or one of the jury replied

that they stood five to seven, and had so stood since about 20 minutes after they went out, and that he did not think there was any chance of their agreeing upon a verdict." They were then discharged. Defendant was not present, being confined in jail. His attorney was present, but being otherwise engaged, did not know what was being done. Upon this record, a plea of former jeopardy was submitted. The court, after stating that this was a question upon which the courts were discordant, says:

"Without reviewing the arguments in support of the holdings, or stating at length the reasons which prompt us thereto, we are very cordially agreed in holding to the latter view, that it is a matter of sound discretion, and, as a consequence, that the court did not err in refusing to discharge the defendant. See Rev. §§ 4821, 4822; State v. Redman, 17 Iowa, 329, and cases there cited.

"The defendant should have been present (Rev. §§ 4681, 4706, 4826, etc.); and the names of the jury should have been called. Rev. § 4827, etc. But if the defendant had been present, he could only have objected, and since such objection would and must have been unavailing, no prejudice can have resulted to him by his absence. And so, of calling over the names of the jurors; such act would only have shown them present, a fact of which the court could and did satisfy itself as certainly as by the calling over the names."

In the White Case, the court says:

"It appears that the jury, in the charge of the bailiff of the court, were out deliberating in the case after the cause had been duly submitted to them fourteen hours— from four o'clock, p. m. of May 3d to six o'clock, a. m., May 4th—and the record shows that they were discharged because it appeared to the court that the jury could not agree. While it is true that the court should not have had the jurors called into the court-room and discharged in the absence of the defendant and his counsel, the error committed thereby was an immaterial one, and for which

this court would not reverse the judgment. Neither should the motion, nor the plea in bar filed by the defendant have been sustained on account of such action. The irregularity of the court consisted in taking action in the absence of the prisoner, and his counsel, not in the fact that the jury were discharged after it had been made to appear to the court that they could not agree upon a verdict, and after a finding and entry of this fact were duly made a matter of record. The court had a right to discharge the jury after they had been kept together until it satisfactorily appeared that there was no probability of their agreeing. Gen. Stat. ch. 80, civil code, § 281; and ch. 82, criminal code § 208. In the case of the United States v. Perez, 9 Wheat. 579 [6 L. Ed. 165], it was held that the court had the right to order the discharge of the jury; and the security which the public have for a faithful, sound and conscientious exercise of this discretion rests in this, as in other cases, upon the responsibility of the judge, under his oath of office."

The court then cited the Vaughan Case and adopts the reasoning of that case, that if the defendant had been present he could have only objected to the action of the court, and as this objection would have been unavailing, "no prejudice could have resulted from his absence," and such action of the court would not operate to reverse the case.

The cases cited by the state as being leading cases to support the contention that the plea of former jeopardy should have been sustained, are: State v. Chandler, 128 Or. 204, 274 P. 303; Holt v. State, 160 Tenn. 366, 24 S. W. 2d 886; Ex parte Thomas, 127 Tex. Cr. R. 243, 75 S. W. 2d 681, and also a note reviewing the early decisions reported in 44 L.R.A. 694. This note follows the case of Upchurch v. State, 36 Tex. Cr. R. 624, 38 S. W. 206, and is one of the earliest leading cases upon the question here involved.

The Chandler Case, supra, so well states the grounds

and reason upon which the opinion is based and so coincides with the conclusions we have reached after a careful study and examination of the authorities, we quote from it as follows [128 Or. 204, 274 P. 304]:

"The defendant, Dan Chandler, was charged with the crime of assault and robbery, being armed with a dangerous weapon. The cause duly came on for trial on June 28, 1928, and was submitted to a jury for its deliberations at 5:50 p. m. on the following day. Five hours later the trial court, Hon. Robert G. Morrow, judge presiding, in the absence of the defendant and his counsel, and without their knowledge or consent, discharged the jury on account of its inability to agree upon a verdict. Neither was the district attorney present. At the time of this order of discharge, the defendant was confined in the county jail.

"The cause was again set for trial, and the defendant interposed a plea of former jeopardy 'without conviction or acquittal,' alleging certain facts relative to the discharge of the jury. He claims that such discharge has the legal effect of an acquittal and is therefore a bar to another prosecution for the same offense. Among other things, it is alleged by defendant that neither he nor his counsel was present in court at the time the jury was discharged. It is also averred: 'That there was no extreme, manifest, urgent, or imperious necessity, nor any special cause or reason, whatsoever, for the said discharge of such jury; nor any unforeseen occurrence arising rendering it impossible for a valid verdict to be rendered in said cause and that such jury was wrongfully and irregularly discharged.' To this plea of former jeopardy a demurrer was sustained by the court over which Hon. Jacob Kanzler, judge, presided. The trial thereafter proceeded, Hon. Arlie G. Walker, judge presiding, under defendant's plea of 'Not guilty,' and, upon verdict of the jury, a judgment of conviction was entered against defendant; hence this appeal.

"Does the record disclose that defendant, in violation of his constitutional right, has been twice put in

jeopardy for the same offense? It is well established in this jurisdiction that jeopardy attached in the first trial when the jury was impaneled and sworn. State v. Steeves, 29 Or. 85, 43 P. 947; Ex parte Tice, 32 Or. 179, 49 P. 1038. How was this jeopardy annulled? If the trial court, in the absence of the defendant, was legally authorized to discharge the jury for its inability to agree, then there is no bar to the prosecution of the action; if, however, the absence of the defendant rendered the discharge of the jury an illegal proceeding, the plea of former jeopardy should have been sustained. In the consideration of this case we are assuming that the trial court exercised its sound legal discretion in determining that the jury were unable to agree upon the verdict. The finding of the trial court on the inability of the jury to agree is, in this state, absolute and conclusive, and cannot be made the basis of a plea of former jeopardy. Relative to this question, this court, in State v. Reinhart, 26 Or. 466, 38 P. 822, said: 'There is some diversity of opinion and practice upon this question, but we believe the better view to be that when the jury, after having deliberated upon their verdict such a length of time as the trial court may deem reasonable, shall make known in open court, in the presence of the defendant, their inability to agree, and the court, having in view all the circumstances surrounding the case, and being satisfied with such report, causes a finding to that effect to be entered in the journal, and thereupon discharges the jury, the apparent jeopardy, which the record shows attached when the jury were impaneled, is annulled, and the defendant may again be put on trial for the same offense, and in such case the findings of the trial court are not subject to review by this court, and cannot be questioned on a plea of former jeopardy.'

"This is the rule in the federal courts. Logan v. United States, 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429. Also see 1 Bishop's New Criminal Law, § 1041. However, this discretion should be exercised with caution. As was said by Mr. Justice Story in United States v. Perez, 9 Wheat. [579], 580, 6 L. Ed. 165, and quoted

with approval in State v. Shaffer, 23 Or. 555, 32 P. 545: "* * * The power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office.'

"When a jury is discharged for its inability to agree, trial courts, in entering the order, should be careful that the jeopardy which is attached is affirmatively shown to have been nullified. This can be done by adhering to the form of entry as suggested in State v. Reinhart, supra. In the instant case, the order of discharge of the jury is indeed meager. It does not recite the presence of the defendant nor that the jury reported in open court that it was unable to agree. We are not disposed, however, to decide this case upon the form of the journal entry. We pass to the vital question: Was the action of the court, in the absence of the defendant, unauthorized by law? Was there a failure to annul the jeopardy? Did it amount to an acquittal? If these questions be answered in the affirmative, then it follows that defendant has twice been put in jeopardy for the same offense.

"If there is anything fundamental and well established in criminal procedure, it is the right of an accused person, on a felony charge, to be present during all of the trial. The statute, section 1512, Cr. L., in mandatory language, provides: 'If it be a felony, he must be present in person.' His presence is essential to the validity of the proceeding. Assuming there was a legal necessity for the discharge of this jury, it could not be done in the absence of the defendant, who at that time was confined in jail. The presence of the accused is not a mere form. It is a sacred and inalienable right which has been won through the struggle of the ages. To hold that a court could arbitrarily and capriciously discharge a jury in

the absence of the defendant, on a felony charge, would, indeed, be establishing a dangerous precedent. It is idle to argue that the discharge of the jury would not materially affect the rights of the defendant. Has he no right to be heard? Who can say that he might not have urged some reason which would have influenced the court in the exercise of its discretion? Indeed, we think it reasonable to assume that, if defendant had been present with his counsel and objection had been made to the discharge of the jury on account of the short time covered by their deliberations, the court would have been more reluctant so to act. We hold that the presence of the defendant was essential to the validity of the proceedings and the unlawful discharge of the jury is, in legal effect, an acquittal of the defendant. He cannot again be put in jeopardy. This conclusion is supported by the overwhelming weight of authority. Bagwell v. State, 129 Ga. 170, 58 S. E. 650; State v. Wilson, 50 Ind. 487, 19 Am. Rep. 719; State v. Sommers, 60 Minn. 90, 61 N. W. 907; State v. Shuchardt, 18 Neb. 454, 25 N. W. 722; State v. Alman, 64 N. C. 364; People ex rel. Stabile v. Warden [of] City Prison, 139 App. Div. 488, 124 N. Y. S. 341; Vela v. State, 49 Tex. Cr. R. 588, 95 S. W. 529; Rudder v. State, 29 Tex. App. 262, 15 S. W. 717; Upchurch v. State, 36 Tex. Cr. R. 624, 38 S. W. 206, 44 L. R. A. 694.

"It is said in 1 Wharton's Criminal Law (11 Ed.) 525: 'For whatever cause a jury may be discharged, in accordance with the provisions of law regulating the exercise of this extraordinary power, the discharge must take place in open court, and in the presence of the defendant; otherwise the discharge of the jury will be equivalent to an acquittal of the accused.'

"In 16 C. J. 251, we find: 'As accused has a constitutional right to be present during the whole trial, the discharge of the jury in his absence, for whatever cause, operates as an acquittal, unless such absence is caused by his flight, or illness, in which case the court may discharge the jury and accused may again be indicted.' See cases collated in note to Upchurch v. State (Tex.) 44 L. R. A. 694.

"We have been able to find only three cases to the contrary. State v. Vaughan, 29 Iowa 286, State v. White, 19 Kan. 445, 27 Am. Rep. 137, and Yarbrough v. Commonwealth, 89 Ky. 151, 12 S. W. 143, 25 Am. St. Rep. 524, and they cite only one another in support of what we think is an erroneous conclusion.

"The precise question has never been decided by this court, although it is very apparent from the language used in cases closely analogous that it has approved the rule announced by the great majority of the courts. It can be said with certainty that an improper or unwarranted discharge of a jury in a felony case has the legal effect of an acquittal. State v. Turpin, 54 Or. 367, 103 P. 438; Ex parte Tice, supra. It is not essential to a plea of former jeopardy that there be a formal judgment of conviction or acquittal. Ex parte Tice cites with approval State v. Wilson, 50 Ind. 487, 19 Am. Rep. 719, which is squarely in point and holds that the discharge of a jury under the facts disclosed by this record is equivalent to an acquittal.

"In State v. Holloway, 57 Or. 162, 110 P. 397, 791, it was said: 'The defendant having been formally charged with the commission of a felony, had a right to be present during the entire trial (sec. 1378, B. & C. Comp.), and, if he was confined in jail and not represented by counsel when the first jury was discharged, as stated in the plea, his further prosecution, based on the charge specified in the indictment, might have been a matter of grave doubt. 12 Cyc. 270; State v. Wilson, 50 Ind. 487, 19 Am. Rep. 719.'

"In State v. Moore, 124 Or. 61, 262 P. 859, Mr. Justice Rossman, speaking for the court, said: 'In State v. Spores, 4 Or. 198, and State v. (Holloway) Halloway, 57 Or. [162], 167, (110 P. [397] 791), we held that it was error to discharge the jury in the absence of the defendant. In the former case the jury had agreed upon a verdict of guilty. In the latter case the jury had disagreed. In both cases a substantial right of the defendant was affected; in the former the defendant might have desired

to poll the jury. In the latter the important function of determining whether the jury should be kept together longer or discharged took place in the absence of the defendant.'

"In the light of the authorities, we are constrained to hold that the plea of former jeopardy should have been sustained. We are not responsible for the situation which has arisen. The failure to have the defendant present in court can only be attributed to inadvertence, but, whatever may be the reason, it is immaterial so far as the legal consequences are concerned."

In the Holt Case, the facts were different, but the same principle is announced when the court said [160 Tenn. 366, 24 S. W. 2d 888]:

"It is a principle pervading the entire law of criminal procedure that no determinative step should be taken in a criminal prosecution, involving a felony, unless the accused is personally present. The accused has a constitutional right to be present during the whole trial and the discharge of the jury in his absence it is said operates as an acquittal, unless such absence is caused by the prisoner's flight or illness. 16 C. J. 251."

In the Thomas Case there was an application for writ of habeas corpus to reduce bond. The exact question here presented was only incidentally before the court, but Judge Lattimore, speaking for the court, said [127 Tex. Cr. R. 243, 75 S. W. 2d 682]:

"If we understand appellant's contention, it is that at a former time he was put to trial for the offense of rape, that a jury was impaneled, a plea of not guilty entered, and testimony was heard, after which the jury retired to consider the case. It is claimed that thereafter, and while appellant was in jail, said jury was brought before the court, and, upon their announcement to the court that they could not agree, a mistrial was declared and the jury was discharged, and that, when all this occurred, appellant was in jail and not present. Upon such facts, it would appear plain that, if this case should

again be called for trial, appellant could successfully interpose a plea of jeopardy."

In the Upchurch Case, supra, a jury was discharged by the court at 12 o'clock at night upon a statement of the bailiff that a juror's wife was sick. This action was not in open court, and neither defendant nor his counsel was present. The next morning the eleven remaining jurors reported and defendant and his counsel refused to proceed with the trial. The court then discharged the jury, pronounced a mistrial over the objection and exception of defendant. The court said:

"It is not necessary in this case to discuss the question as to whether it is competent for the court, under our constitution and laws, to discharge a juror on account of the sickness of some member of the juror's family, pending the trial of a person charged with felony. The question we will consider is whether or not the court is authorized to take such action as was taken here in the absence of the prisoner, and not in open court. Our statute provides (Code Crim. Proc. 1895, art. 737 [Code Cr. Proc. 1925, art. 680]) as follows: 'If, after the retirement of the jury in a felony case, any one of them become so sick as to prevent a continuance of his duty, or any accident or circumstance occur to prevent their being kept together, the jury may be discharged.' Conceding that the legislature had the power to enact this article, and conceding that the severe illness of the wife of a juror is such a circumstance as would authorize the discharge of the jury,—propositions about which we express no opinion, because unnecessary,—still, it was absolutely necessary to judicially ascertain the fact of sickness before the jury could be legally discharged. This apprehends a judicial finding. It is a step in the progress of his trial, and an important one, so far as defendant's rights are concerned. Mr. Bishop says: 'That in all trials for felony, at every material stage in the trial, it is absolutely necessary that the accused be present, else there can be no valid judgment against him.' 1 Bish. Cr. Proc. § 273. And he also lays down the following: 'If any

fact is to be established requiring or necessitating the discharge of the jury before the verdict, as the sickness of one of the panel, plainly the prisoner must be present.' Section 272, subd. 2. We also quote from the well-considered case of State v. Smith, 44 Kan. 75, 24 P. 84 [8 L. R. A. 774, 21 Am. St. Rep. 266]. This was a case that came up much in the same way as the case before us, and under a statute somewhat similar to ours, with reference to the discharge of a juror on account of sickness. In that case one of the jurors was taken sick, and it was reported to the court, in the absence of the prisoner, that he was unable to be present in the court during the trial, on account of his sickness. The judge thereupon, in open court, and when defendant's counsel were present (but the prisoner was absent in jail), discharged the panel, and the question of jeopardy was presented. Among other things, the learned judge, in deciding said case, uses this language: 'When an order is made by a trial court discharging a jury without verdict, to which has been committed the question of the guilt or innocence of the person charged with the crime, the record ought to show affirmatively the existence of the fact which induced such order, and justified the exercise of such extraordinary power. * * * Now, the court in this case shows that one of the causes for which the trial court is authorized to discharge a jury in a criminal case by the statute of this state happened on this trial, to wit, the sickness of a juror. The sickness did not happen in the immediate presence of the court. The juror took sick at home during a recess of the court, and the fact of sickness had to be established in accordance with the rules that govern in all cases when the fact is to be judicially established, and made a finding upon which to base a legal conclusion or judicial action.' And, in conclusion upon this point, the court say: 'We think that error was committed in determining the sickness of a juror as a cause for the discharge of the jury, in the absence of the appellant.' Now, in the case at bar the action of the judge was not in open court at all. It was at night, some distance away from the court room, in the absence, not only of the juror, but of the prisoner and his counsel. Not

only so, but this action was taken on the ex parte statement of an officer of the court that someone had informed him that the wife of the juror Abbott was very sick. Could the court, under such circumstances, make a judicial finding of so important a fact in the progress of this trial,—one which involved the discharge of the jury? If so, the discharge of a juror in any case would appear to be a matter entirely within the arbitrary discretion of the judge,—a power which he could exercise in the absence of the prisoner, and without any judicial procedure to ascertain the fact which would authorize his action. Such arbitrary power would place it entirely within the province of a judge to discharge a jury of his own motion, and without investigation. If, in any given case, he should desire the conviction of a defendant, and it should appear that the jury was not likely to convict, that the state had not entirely made out its case, by his arbitrary discretion he could discharge the jury, and upon a subsequent trial, the state being better prepared, secure a conviction. This was the practice of courts in the days of the Stuarts, but happily not so now. It is well settled that the court's discretion is a judicial discretion, and not an arbitrary discretion. Take this case as it appears to us from the subsequent trial, in which the facts were presented; if this investigation had been had when the defendant was arraigned on his first trial, if he had been present, and had objected to the discharge of the jury, and insisted, as he had a right to do, upon an examination as to the necessity for such discharge, the record as it now presents itself to us, we think, would have shown that there was no such existing necessity for the discharge of the juror. At a subsequent term of the court, not at the time the jury was discharged, evidence was received bearing upon the fact as to whether the juror's wife was sick or not. The testimony received relating to that fact, as we have said above, shows that the jury ought not to have been discharged, but the investigation into the facts should have been made before the jury was discharged, and not at the time the plea was interposed. The defendant had a right to be heard then, and not forced to wait until a subsequent term to ascer-

tain whether the court had acted correctly or not. In Wright v. State [35 Tex. Cr. R. 158], 32 S. W. 701, in a case involving the question of jeopardy, this court used the following language: 'Again, the record informs us simply that the court discharged the jury. We are left to inferences as to the reasons prompting him to this action. There should have been a judgment of the court finding and declaring that the jury had been kept together such a length of time as to render it altogether improbable that they could agree,'—citing Adams v. State [34 Fla. 185], 15 So. 905. If the court is to find and ascertain the fact which authorizes him to act in discharging a jury, this apprehends a trial,—a trial in open court, in the presence of the accused, and not an ex parte proceeding, at which he is neither present nor consenting.

"Because, in our opinion, the action of the court in discharging the jury was without authority of law, the defendant having once been placed in jeopardy, the judgment of the court below is reversed, and the defendant ordered to be discharged."

We have examined all of the cases cited in the note following this case in 44 L. R. A. 694, this being the note in which the state in its brief cites conflicting authorities upon the question here involved. Practically every case cited sustains the contention, under facts very similar to the case at bar, that jeopardy has attached and that the plea should be sustained. See the following cases: Rudder v. State, 29 Tex. App. 262, 15 S. W. 719; State v. Wilson, 50 Ind. 487, 19 Am. Rep. 719; State v. Alman, 64 N. C. 364; Ex parte Tice, 32 Or. 179, 49 P. 1038; People v. Higgins, 59 Cal. 357; Alston v. State, 109 Ala. 51, 20 So. 81; Price v. State, 36 Miss. 531, 72 Am. Dec. 195; State v. Shuchardt, 18 Neb. 454, 25 N. W. 722; Finch v. State, 53 Miss. 363; State v. Smith, 44 Kan. 75, 24 P. 84, 8 L. R. A. 774, 21 Am. St. Rep. 266; People v. Cage, 48 Cal. 323, 17 Am. Rep. 436; Nolan v. State, 55

Ga. 521, 21 Am. Rep. 281; Jones v. State, 97 Ala. 77, 12 So. 274, 38 Am. St. Rep. 150.

All of these cases sustaining the contrary rule are based upon cases where the defendant voluntarily absented himself from the court such as by reason of flight or escape, or that his presence had been waived by his counsel who was present at the time of the discharge of the jury by the court. State v. Wamire, 16 Ind. 357; People v. Higgins, 59 Cal. 357; Alston v. State, 109 Ala. 51, 20 So. 81; In re State ex rel. Battle, 7 Ala. 259; People v. Smalling, 94 Cal. 112, 29 P. 421; Wheelock v. State, Tex. Cr. App., 38 S. W. 182.

We have stated that the record in this case is not complete. This has special reference to the proceedings had at the second trial of these defendants on the 7th day of October, 1940. The reason for this is revealed in the hearing upon the application of the defendants, after their conviction at the third trial, for a case-made to be furnished them at the expense of the county, in order that they might prosecute their appeals to this court. The trial court, before whom this application was presented, ordered, in compliance with the statute and decisions of this court, that the case-made be furnished, but in making the order said:

"There is no question but what the defendants in this case are entitled to have the court reporter's notes extended at the expense of the county, in order that this case may be reviewed, but that brings up several questions in connection with the application.

"The next question is whether the other instruments he refers to there and other records which he refers to there should be included in the order directing the reporter to extend his notes in this case and the next question presents itself. Counsel in this case is asking for the court to require the reporter in the other divisions of this court to furnish copies of certain proceedings that

happened in other divisions of this court. That question presents itself in this manner. Should this court—should I, as the trial judge in division No. 2 of this court attempt to require the record and proceedings that took place before other judges of this court at other times when this case was up before them, to be included in this? That is what Mr. Peters is asking for on behalf of his clients, and the court would like to know what position the state takes." . . .

"You have not met the requirements with respect to the showing that is necessary to get the benefit of this statute, and in this case, gentlemen, the court will not direct the court reporter to make a complete case-made as we usually refer to the term, at the expense of this county but, following the statute, the court reporter, Mr. McKinney, division No. 2 of the district court of Tulsa county is hereby directed to make out and file with the clerk of this court a transcript of his shorthand notes taken in the trial of this case before me, Oras A. Shaw, Judge of the District Court, Division No. 2, and it is so ordered."

The record reveals that at least three different judges have passed upon and made orders at the trial of these defendants. Each of these judges had different court reporters. We do not think that a construction should be placed on the statute permitting a defendant to be furnished a record or case-made at the expense of the county which would permit the court to deny a defendant a full and complete record to the end that he could not present all of the issues involved in his appeal to the appellate court. The fact that part of these notes were made by one reporter and a part by another reporter should not deprive the court of the right to order a full and complete record even though it required each of the said reporters to prepare the same. This statute was enacted by the Legislature of this state for the benefit of a poor defendant, to the end that he may not be de-

prived of his legal rights. No construction should be placed thereon that would deprive him of those rights. It is true that the question of expense to the county should be considered, but it was not intended by the law-making body of this state when it enacted this statute that the question of expense should deprive a poor defendant of the right to present his appeal to a higher court where he and his counsel believe they have a just right to appeal. The facts as revealed by this record well illustrates the correctness of this conclusion. We have made the above statement with reference to the record for the reason of its bearing upon the question as to whether the defendants, by their actions, had waived the right to present the question of former jeopardy at the time of the third trial. Is it consistent to ask the court, in view of the above record, to infer that the defendants were present when the jury was dismissed at the first trial, when the record does not affirmatively so show, and at the same time to ask the court to infer that no motion was filed at the second trial when the record is not before us? It is true that the courts have held that the right of former jeopardy is a right which may be waived, but it is also a sacred right of which a defendant ought not to be deprived by denying his constitutional or statutory rights. In the instant case, neither the defendants nor their attorneys were present when the jury was discharged.

It is true that in the back part of the case-made there appears an order made on the 30th day of April, 1941, which bears the mark of "Nunc pro Tunc", which recites:

"It is hereby ordered; that said court clerk's journal entry made in said case on said date be corrected to show that all defendant were present in person and by

their attorney, W. C. Peters, during all proceedings had in this court on said date," but there is nothing in the record to show that any hearing was ever had before any court before this order was entered, or that the defendants or their attorneys were notified of any such hearing. It further appears that the order was made after the term of court had expired at which the jury had been discharged. Ex parte Dick Cook, 2 Okla. Cr. 684, 103 P. 1041. It just seems to have been signed by the court and placed in the case-made after being filed and recorded in the court clerk's office.

The defendants and their attorneys did not have an opportunity to object to the discharge of the jury and to take exception to the order of the court. The record does not reveal that the court made any inquiry as to the probability of the jury being able to arrive at a verdict. Just why the jury should have been discharged at 12 o'clock, midnight, after having deliberated only six and one-half hours in a case which carried a maximum penalty of 50 years in the penitentiary, is not explained. It has often been decided by many courts that it is the duty of the court to make a judicial finding before discharging the jury, and many of the courts have held that the record shall affirmatively show the defendants present at the time of the discharge. (See cases heretofore cited in this opinion.)

The only record in the instant case seems to have been made by the court clerk, and no formal order was made by the trial judge.

If the statute is to be construed that when the jury is to be discharged is within the discretion of the trial court, and this we think, is the right conclusion, yet it cannot be doubted that this discretion should not be abused, and defendants denied the right to be present

either in person or by their attorneys, unless this right is waived as shown by the record.

It has often been decided by this court that when a new trial is granted this places the defendant in the exact status as if no trial had been had. Watson et al. v. State, 26 Okla. Cr. 377, 224 P. 368; Snelling v. State, 41 Okla. Cr. 124, 271 P. 687; Duncan v. State, 41 Okla. Cr. 89, 270 P. 335; Bayne v. State, 48 Okla. Cr. 195, 290 P. 354.

These cases hold that if a defendant has been tried for murder and convicted of manslaughter, the granting of a new trial does not deprive the state of the right to try the defendant for murder at the time of the new trial. The reasoning is that he cannot secure a new trial and claim the benefits of what he desires by reason thereof, and at the same time refuse to take that which is not to his liking or benefit. Why does not the same argument apply in the instant case? If the granting of a new trial to these defendants placed them in the same position, why could they not, on the third trial, raise those questions which they had a right to raise at the second trial? It may be, and is, argued that they should have raised it at the second trial, and not be permitted to speculate as to a verdict of not guilty at the time of that trial. But as above stated, the record as to what transpired at the second trial is not before us and through no fault of the defendants, and over their exception and objection.

We have heretofore referred to the question of whether the defendants by going to trial on October 7, 1940, without having filed a plea of former jeopardy had thereby waived their right to raise this question on the third trial on December 3, 1940.

As before stated, in order to properly consider this

question, it would be necessary to have all the record as to what transpired preceding the second trial of these defendants. The trial court refused to order this record, as before stated, and the defendants excepted to the ruling of the court. In the absence of this record, it is impossible to know or pass on what issues were made at that time. No reason being given by the court as to why the new trial was granted, it is impossible to know the exact facts. Under these circumstances, we do not think that every inference should be held against the defendants. It is just as proper to infer that the question was raised at the second trial, and that this was the reason the court gave a new trial, as to infer that it was not raised. While it is recognized that it is the best practice to raise the question of former jeopardy by filing a written plea setting forth the facts and presenting this issue to the trial court, before the actual trial of the case and out of the presence of the jury, yet many courts have held that this is not absolutely necessary, and that when this issue presents itself by the evidence offered, that the same should be considered and decided.

From an examination of the record and the authorities, we have come to the conclusion that the great weight of authority, and the best-reasoned cases sustain the contention that the plea of former jeopardy should have been sustained. This is especially true in view of the early decisions of this court in construing the statutes of this state, and that defendants did not waive this right.

There is one other issue in this case. These defendants, together with two co-defendants, were charged with conjoint robbery. The facts are that the prosecuting witness lived in New Mexico. He went to Flint, Mich., for the purpose of buying a new automobile. He was driving it to his home and arrived at Tulsa, Okla., about

10 o'clock p.m. on the night of January 2, 1940. He secured a room in the Bliss Hotel and put his car in a garage. He then went up town for the purpose of getting something to eat. After he had done so, he accosted a perfect stranger whom he had never seen, Orbie Childres, and told him he would like to see the city of Tulsa. Mr. Childres informed him he had no way, but would introduce him to some friends. Then went a short distance and he introduced him to two of the defendants, Harlan Arnett and Walter Stough. They had an old Buick car and he got in with them to see the town. They only went a short distance until they entered a beer joint and saw some girls and a policeman. The girls afterward turned out to be the wives of Harlan Arnett and Walter Stough. They drank beer and then went to another place, and the prosecuting witness and one of the women went in and bought several bottles of whisky. The prosecuting witness paid for the whisky and beer. While at one of the beer parlors, Harlan Arnett excused himself and leaving in the car, found Orbie Childres, who had first brought the prosecuting witness to the defendants, and Bud Brown, Arnett's half-brother, and took them to an apartment where the defendants Harlan Arnett and Walter Stough lived. He then returned to the beer garden and all five of the party got into the car and an attempt was made to get a third girl, but they were not successful in doing so. They drove west on the Sapulpa road, U. S. Highway 66, and Arnett, who was driving, suggested that they rent a cabin. They did so and the prosecuting witness paid the proprietor $1.50 for the same. This cabin had two bedrooms and a kitchen. After drinking and dancing, the prosecuting witness claiming he had not tried to dance but that Mrs. Arnett insisted that they go through the motions, and he finally consented to do so. The defendant Jackie Stough tried

to get him to drink some whisky. He told her he would, if she would. Finally the women turned down the bed in one of the bedrooms and told the prosecuting witness, Keene, that this was his room. He pulled off his coat and hung it on a chair, and took off his pants and placed them under the pillow. He had $420 in a purse in the pants pocket, and there is no evidence to show that either of the four defendants ever saw or knew he had this money. When he lay down on the bed, Mrs. Arnett made an attempt to get in bed with him, but was pushed back by the defendant Jackie Stough, who got in bed with him, and the lights were turned out. The prosecuting witness heard someone in the room and felt down by the side of the bed and touched the defendant Arnett. He started to get up and was struck by the defendant Arnett with his fists. There was some general fighting, and the prosecuting witness was bruised and beat up. He testified he was struck by the defendant Walter Stough and that his cheek bone was broken. He also testified that the defendants told him that they wanted his money and demanded that he give it to them. He further stated that while he was being struck by defendants he took his purse from his pants pocket and placed the same between the mattress of the bed and a cover over the springs of the bed. He hollowed and left the room, leaving the defendants therein. He aroused the party from whom he had rented the cabin, and when they returned to the room all of the defendants had left. When he returned to the cabin, he found his billfold with the $420 therein unmolested. He claimed he had lost a Gillette electric razor, of the value of $15, and 75c in money. His testimony was somewhat indefinite and uncertain as to when he lost the razor and the money. He ordered a taxi and went to the Bliss Hotel for the purpose of seeing that his car was not taken, as he claimed to have lost the

check for the same. He was examined by a doctor, who testified to his physical condition as above stated. The state offered the witness Childres who introduced the prosecuting witness to the defendants Arnett and Stough. He testified that he and a half-brother of Arnett, Bud Brown, spent the night at the apartment of the defendants, and on the following morning he saw a Gillette electric razor on the table, and that the defendant, Arnett, attempted to shave his brother with it. That he and the brother carried it to the Bliss Hotel, but the record does not reveal anything further as to what was done with it, and it was not introduced in evidence or identified by the prosecuting witness.

The only other evidence offered by the state was that of a detective from the Tulsa police department, W. E. Wooley. Mr. Wooley testified to going to the apartment of the defendants on the following morning and finding all four of the defendants present there. That he placed them under arrest, and that they all stated that they did not know the witness Keene, and had never seen him. With this evidence, the state closed its case. The defendants placed no witnesses upon the stand.

The defendants were prosecuted for conjoint robbery, Oklahoma Statutes 1931, sec. 2552, O. S. A. (Stat. 1941) Title 21, § 800, hereinbefore quoted.

We are not attempting to dictate the procedure to be followed by county attorneys as to what charge should be filed by them against individuals in different cases. This is a matter for the discretion of the county attorney. The evidence and facts in this case as known by the county attorney may have justified their being charged under the conjoint robbery statute, which carries a maximum punishment of 50 years in the penitentiary, but certainly from the facts above stated it is a border line

case. There are a number of statutes with a lesser degree of penalty under which charges could have been filed in this case. The prosecuting witness was not altogether blameless. He approached a perfect stranger in his desire to see the bright lights of a large city, and entered into the company of strange men and strange women. He luckily emerged therefrom without the loss of the $420 which he had on his person. He was certainly entitled to the protection of the law against individuals such as the record reveals the defendants to be, but he should also have been more careful in his pursuit of pleasure.

In the early case of Monaghan v. State, 10 Okla. Cr. 89, 134 P. 77, 80, 46 L. R. A., N. S., 1149, Judge Doyle, in an opinion where the facts were somewhat similar to the facts here, said:

"It would seem, and we would suggest, that always in a case of this character, where the line of demarcation between offenses, as in this case, has a very narrow margin, the safe practice, where the proof may be uncertain, is to charge the lesser offense."

After careful review of the record, we are of the opinion that the plea of former jeopardy should have been sustained, and for this reason, the judgment of the district court of Tulsa county is reversed. The record in this case reveals that the defendants have already served one year and seven months in jail and in the penitentiary as a result of these charges.

It is therefore ordered that the warden of the State Penitentiary at McAlester release the defendants, Walter Stough and Jackie Stough, to the sheriff of Tulsa county, and that the district court of said county enter an order sustaining the plea of former jeopardy filed in this case, and discharge said defendants.

JONES and DOYLE, JJ., concur.